United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 96-2380
_____

United States of America,                    *
                                             *
      Plaintiff-Appellee,           *
                                             *
v.                                           *
                                             *
Eldon Gene Nattier,                          *
                                             *
      Defendant-Appellant.          *


_____

No. 96-2451
_____

    Appeals from the United States
    District Court for the
    Eastern District of Missouri.

United States of America,                    *
                                             *
      Plaintiff-Appellee,           *
v.                                           *
                                             *
James Franklin Coley,                        *
                                             *
      Defendant-Appellant.          *

_____

Submitted: January 13, 1997

Filed:       October 3, 1997
_____

Before WOLLMAN and HANSEN, Circuit Judges, and MONTGOMERY,[1]
     District Judge.
_____

HANSEN, Circuit Judge.

Eldon Gene Nattier and James Franklin Coley were convicted by a jury on several counts of conspiracy, money laundering, and making false statements in violation of federal law. They appeal their convictions and sentences. We affirm.

**I.**

Count I of the 19-count indictment in this case charged Eldon Nattier, James Coley, and Nattier's son Jonathan Marc Nattier (Marc) with conspiracy (1) to embezzle funds from Mercantile Bank of St. Louis, in violation of 18 U.S.C. § 656 (1994), and (2) to launder the embezzled funds in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i) (1994). Count I listed 19 overt acts in furtherance of the conspiracy, including that the three men opened a new bank account in Cape Girardeau, Missouri, some distance from St. Louis, in the name of International Realty Investments, Inc. (IRI), which was a legitimate Missouri corporation with Eldon Nattier as the president, Coley as the chief operating officer, and Marc as the secretary/treasurer. The corporation was formed years before the conspiracy began and existed as a real estate

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota, sitting by designation.

2

investment company. Marc fraudulently caused Mercantile Bank (his employer) to issue to IRI checks totaling $479,341.19. This money did not belong to IRI but to another corporation having a name similar to IRI. The conspiracy count charged that the defendants deposited the embezzled checks into IRI's newly established bank account and caused IRI to purchase various parcels of real property in St. Louis with the embezzled funds.

Counts III through VI[2] charged Nattier and Coley with making false statements to obtain food stamps. Count VII charged Nattier with making false statements to the Internal Revenue Service (IRS). The remainder of the indictment charged Nattier and Coley with specific counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (a)(1)(B)(i). These instances of money laundering included the same purchases of real property in St. Louis referenced as overt acts in count I, along with one property in Kentucky and one 1991 Ford Explorer -- all purchased with checks drawn on IRI's newly established corporate account which contained the embezzled funds.

A jury convicted Nattier and Coley on all counts against them. The district court[3] grouped all of the counts for sentencing, with the money laundering counts being the most serious offenses. The district court imposed on Nattier a sentence of 78 months of imprisonment on the money laundering counts. Because the conspiracy and the false statement counts were limited by a statutory maximum penalty, the district court imposed separate concurrent sentences of 60 months of imprisonment for these offenses. Likewise, the district court sentenced Coley to 63 months of imprisonment

---

[2]Count II related solely to Marc, who pleaded guilty and is not a party to this appeal.

[3]The Honorable Jean C. Hamilton, Chief Judge, United States District Court for the Eastern District of Missouri.

on the money laundering counts and concurrent 60-month sentences on the conspiracy and the false statement counts.

Nattier and Coley appeal, challenging the denial of Nattier's motion to dismiss count I, the sufficiency of the evidence to sustain their money laundering convictions, the jury instructions, and the district court's calculation of their sentences. Additionally, Coley contends that the government coerced him into not presenting expert testimony concerning the effects of domestic violence.

## II.
### A. Motion to Dismiss

Nattier contends that the district court erred by denying his motion to dismiss count I of the indictment as duplicitous, arguing that count I charged two separate objects of the conspiracy. We review de novo the district court's denial of Nattier's motion to dismiss count I of the indictment. See United States v. Sykes, 73 F.3d 772, 773 (8th Cir.), cert. denied, 116 S. Ct. 2503 (1996). Federal Rule of Criminal Procedure 8(a) provides that the government may charge two or more connected offenses in the same indictment, provided each is charged in a separate count. "Duplicity is the joining in a single count of two or more distinct and separate offenses." United States v. Street, 66 F.3d 969, 974 (8th Cir. 1995) (internal quotations omitted). "The principal vice of a duplicitous indictment is that the jury may convict a defendant without unanimous agreement on the defendant's guilt with respect to a particular offense." United States v. Karam, 37 F.3d 1280, 1286 (8th Cir. 1994), cert. denied, 513 U.S. 1156 (1995). The risk inherent in a duplicitous count, however, may be cured by a limiting instruction requiring the jury to unanimously find the defendant guilty of at least one distinct act. Id.

The jury instructions in this case acknowledged that count I of the indictment charged a conspiracy to commit two separate offenses -- conspiracy (1) to embezzle

4

funds and (2) to launder the unlawful proceeds of the embezzlement. The relevant instruction stated as follows:

> It would be sufficient if the Government proves, beyond a reasonable doubt, a conspiracy to commit <u>one</u> of those offenses; but, in that event, in order to return a verdict of guilty, you must unanimously agree upon <u>which</u> of the two offenses was the subject of the conspiracy. If you cannot agree in that manner, you must find the defendants not guilty.

(Appellant Nattier's Adden., Jury Instr. No. 14.). "We assume, as we must, that the jury followed these instructions." <u>Karam</u>, 37 F.3d at 1286. We conclude that this limiting instruction was sufficient to cure the risk of a nonunanimous verdict on the conspiracy charge, and the district court did not err by denying Nattier's motion to dismiss count I.

## B. Sufficiency of the Evidence

We next address the defendants' contention that the government presented insufficient evidence to sustain their convictions on the substantive counts of money laundering. When considering whether the evidence is sufficient to support a guilty verdict, "we view the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences." <u>United States v. Herron</u>, 97 F.3d 234, 236 (8th Cir. 1996), <u>cert.</u> <u>denied</u>, 117 U.S. 998 (1997). We reverse only "if no reasonable jury could have found the defendant[s] guilty beyond a reasonable doubt." <u>United States v. Taylor</u>, 82 F.3d 200, 201 (8th Cir. 1996) (internal quotations omitted).

Nattier and Coley argue that the general verdicts on the money laundering counts must be set aside because the government did not prove every element of each form of money laundering charged. Each money laundering count charged that the specified conduct violated two subsections -- 18 U.S.C. § 1956(a)(1)(A)(i) and 18 U.S.C. § 1956(a)(1)(B)(i). The two subsections, each requiring proof of three elements, share

5

two common elements. Both subsections require the government to prove that the defendants (1) engaged in the specified transactions involving illegal proceeds and (2) knew that the funds were illegal proceeds. See United States v. Rounsavall, 115 F.3d 561, 565 (8th Cir. 1997) (setting forth the requirements under 18 U.S.C. § 1956(a)(1)(B)(i)), petition for cert. filed (Aug. 20, 1997) (No. 97-5687); United States v. Jenkins, 78 F.3d 1283, 1288 (8th Cir. 1996) (setting forth the requirements under 18 U.S.C. § 1956(a)(1)(A)(i)). Nattier and Coley do not dispute that they engaged in the specified financial transactions and knew that the proceeds of unlawful activity were involved. Thus, the first two elements of each subsection are satisfied.

Nattier and Coley challenge only the government's proof on the final element of each subsection. The final element of subsection (a)(1)(A)(i) requires proof that the defendants intended to promote the carrying on of embezzlement, and the final element of subsection (a)(1)(B)(i) requires proof that the defendants knew that the transaction was designed to conceal the illegal proceeds. Because the general verdict on each money laundering count does not indicate which alternative the jury found in this case, we examine the sufficiency of the evidence under each subsection.

First, the defendants argue that the transactions specified in the indictment could not have furthered or promoted the carrying on of the embezzlement within the meaning of subsection (a)(1)(A)(i), because the embezzlement was complete by the time these transactions took place. We disagree. Nattier and Coley were engaged in an embezzling and money laundering scheme designed to promote the goals of and to reap a profit for IRI, their real estate investment company. The scheme was devised and carried out after the defendants discovered a similarity in name between IRI and one of Mercantile Bank's customers to whom dividends were owing but unclaimed. Due to this similarity in name between the two companies, IRI and its financial transactions were integral to the embezzlement scheme. While the unlawful act of embezzlement may have been complete at the time Marc obtained the checks for IRI, the funds could not benefit the overall criminal scheme until successfully deposited in IRI's bank

6

account and made available for the real estate and other financial transactions specified in the indictment. All of the defendants' financial transactions after first depositing the embezzled checks in IRI's account furthered this scheme and contributed to the overall prosperity of the conspiracy and the act of embezzlement. See United States v. Cavalier, 17 F.3d 90, 93 (5th Cir. 1994) (holding a defendant can conduct a financial transaction to promote, or contribute to the prosperity of, a completed unlawful activity for purposes of section 1956(a)(1)(A)(i)); See also United States v. Montoya, 945 F.2d 1068, 1076 (9th Cir. 1991) (holding deposit of bribery proceeds into a bank account was a transaction intended to promote the carrying on of the bribery by characterizing the proceeds as legitimate funds) (cited with approval in United States v. Morris, 18 F.3d 562, 569 (8th Cir. 1994)); United States v. Pellulo, 961 F. Supp. 736 (D.N.J. 1997) (holding even if embezzlement was completed when funds were transferred to account, additional financial transactions were necessary to realize a benefit from the embezzlements, so transactions were within the scope of 18 U.S.C. § 1956(a)(1)(A)(i)). But see United States v. Heaps, 39 F.3d 479, 485-86 (4th Cir. 1994) (criticizing and disagreeing with both Montoya and Cavalier).

Second, Nattier and Coley contend that their actions did not demonstrate an intent to conceal their identity and relationship to the funds because they were readily identifiable as officers of the corporation through which they were spending the funds. Regardless of whether Nattier and Coley attempted to conceal their ownership of or relationship to the funds, their intent to conceal the nature or source of the funds within the meaning of section 1956(a)(1)(B)(i) was evident. Nattier and Coley concealed the nature and source of the funds by placing the embezzled funds in the seemingly legitimate business account of IRI and passing them off as funds of a legitimate business. Also, Count XIX charged that Nattier laundered funds by settling an $86,539 tax debt with payment of $3,600 of embezzled funds. Nattier concealed the source and ownership of the funds used to extinguish his tax debt by depositing them first in IRI's account, then transferring them to an account in Harlingen, Texas, in the name of his father and himself. Nattier told the IRS that he had no funds with which to pay the tax

7

debt and further represented to the IRS that he had borrowed the money from his father to pay the settlement amount. Thus, even though the defendants did not use false names in an attempt to conceal their identity, they used their legitimate real estate business and Nattier's father in an attempt to conceal the source of the funds within the meaning of subsection (a)(1)(B)(i).

The defendants also argue that allowing their convictions to stand would turn the money laundering statute into "a money spending statute," contrary to our prior holding in United States v. Rockelman, 49 F.3d 418, 422 (8th Cir. 1995). See also Herron, 97 F.3d at 237. We conclude that Rockelman and Herron are distinguishable from this case. In Rockelman, we reversed a money laundering conviction for lack of concealment where the defendant purchased a cabin with cash, which consisted of illegal proceeds, placed the title in the name of his business, and made no attempt to conceal either his own identity or the source of the funds. 49 F.3d at 422. In Herron, we reversed a money laundering conviction for lack of concealment where the financial transaction at issue was a wire transfer of funds and the defendant made no attempt to conceal his identity. 97 F.3d at 237. In the present case, however, the defendants first deposited the embezzled Mercantile Bank's checks in IRI's business bank account and then invested the illegal proceeds in property by drawing checks on IRI's account, thus representing the illegal proceeds as funds of their legitimate business. Additionally, Nattier transferred some of the illegal funds from IRI's account to the Texas bank account and represented the funds as money borrowed from his father. "This was not a case of a person simply using illegally obtained funds to purchase personal items," Cavalier, 17 F.3d at 93; therefore, an affirmance of these convictions will not convert the money laundering statute into a money spending statute.

We conclude that a reasonable jury could have found beyond a reasonable doubt that, by investing the illegal proceeds through their business, Nattier and Coley intended "to promote the carrying on of specified unlawful activity" within the meaning of section 1956(a)(1)(A)(i), and also that they knew they were concealing the nature

8

or source of the proceeds of the unlawful activity within the meaning of section 1956(a)(1)(B)(i).

## C. Jury Instruction

Nattier and Coley challenge the separate money laundering convictions on the basis of the jury instructions. Coley contends that the instructions did not correctly state the difference between the two types of money laundering charged. As already indicated, each money laundering count charged that the specified conduct violated two different subsections of the money laundering statute -- 18 U.S.C. § 1956(a)(1)(A)(i) and 18 U.S.C. § 1956(a)(1)(B)(i) -- and Instruction No. 17 permitted the jury to enter a general guilty verdict if it found either an intent to promote the carrying on of embezzlement or knowing concealment of the source, ownership, or nature of the embezzled funds. Instruction No. 17 advised the jury that the defendants could be found guilty of conducting an illegal financial transaction if (1) they engaged in the specified financial transactions involving the proceeds of embezzlement, (2) they knew that the funds were proceeds of some form of unlawful activity, and (3) they either (a) intended to promote the carrying on of the embezzlement (necessary for subsection (a)(1)(A)(i) money laundering) or (b) knew the transaction was designed to conceal the nature, ownership, source, or control of the embezzled funds (necessary for subsection (a)(1)(B)(i) money laundering). In this manner, Instruction No. 17 accurately set forth the elements of proof required for each subsection and properly instructed the jury on each element of the crime. See Rounsavall, 115 F.3d at 565 (setting forth the requirements under 18 U.S.C. § 1956(a)(1)(B)(i)); Jenkins, 78 F.3d at 1288 (setting forth the requirements under 18 U.S.C. § 1956(a)(1)(A)(i)).

Nattier contends that Instruction No. 17 failed to require the jury to unanimously agree on which statutory alternative the defendants violated. Because Nattier did not object at trial to Instruction No. 17, we review for plain error. See Herron, 97 F.3d at 238; Fed. R. Crim. P. 52(b). Under plain error review, we must determine whether the

9

district court committed an error that is plain under current law and whether it "'affected the defendant's substantial rights.'" Id. (quoting United States v. Olano, 507 U.S. 725, 732 (1993)). When a plain error has affected substantial rights, we have discretion to correct the forfeited error "if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 736 (internal quotations omitted).

The district court did not commit plain error in this case. Instruction No. 17 specifically provided that "[t]o find the defendants . . . guilty of the offenses, you must agree unanimously that one or more of the objectives charged were proved beyond a reasonable doubt." (Appellant Nattier's Adden. at Def.'s Ex. 3.) "The court conceivably might have been clearer in its explanation of the workings of the unanimity principle in this case, but we cannot conclude that this instruction constituted error, much less plain error." United States v. Blumeyer, 114 F.3d 758, 770 (8th Cir. 1997). See United States v. Gruenberg, 989 F.2d 971, 975 (8th Cir.) ("A general unanimity instruction usually protects a defendant's sixth amendment right to a unanimous verdict."), cert. denied, 510 U.S. 873 (1993).

## D. Sentencing

The defendants contend that the district court erred in calculating their sentences, because the general verdicts are ambiguous and the Sentencing Guidelines calculation provides disparate sentencing ranges for the two types of money laundering charged and the two possible objects of the single charged conspiracy. On count I, the jury did not specify whether embezzlement, money laundering, or both were found to be the object of the conspiracy; likewise, on each money laundering count, there is no indication from the verdict whether the jury found money laundering through promotion of the specified unlawful activity under subsection (a)(1)(A)(i), through concealment of the source of the funds under subsection (a)(1)(B)(i), or both. While we agree with

10

the defendants that the verdicts are ambiguous, we do not believe resentencing is required.

Generally, we have held that where more than one possible object of a drug conspiracy is stated in the indictment, a district court should use a special verdict form to permit the jury to indicate its finding as to what drug was the object of the conspiracy where the establishment of the defendant's base offense level requires such a determination and where the Sentencing Guidelines provide disparate sentencing ranges for each. See United States v. Owens, 904 F.2d 411, 415 (8th Cir. 1990). If a general jury verdict is utilized in such a case, the district court should sentence the defendant on the alternative that yields a lower sentencing range. Id.; see also United States v. Wiggins, 104 F.3d 174, 177-78 (8th Cir. 1997) ("When defendants are convicted by a verdict that is ambiguous as to what type of drug they possessed or distributed, they may not be sentenced based upon the alternative producing the higher sentencing range."); United States v. Baker, 16 F.3d 854, 858 (8th Cir. 1994) (noting this principle "has frequently been applied to general verdicts in conspiracy cases"). "When a defendant is convicted by an ambiguous verdict that is susceptible of two interpretations for sentencing purposes, he may not be sentenced based upon the alternative producing the higher sentencing range." Id. at 857-58; see Owens, 904 F.2d at 415.

Where, however, the trial evidence is so strong that we can confidently say the jury must have been convinced beyond a reasonable doubt that one particular drug carrying a heavier penalty, as opposed to another carrying a lower penalty, was involved in the criminal activity, we have affirmed the imposition of the higher sentence. See Wiggins, 104 F.3d at 178 ("However, when trial evidence leaves no doubt as to the substance involved, it is not error to sentence a defendant consistent with that evidence."); accord United States v. Watts, 950 F.2d 508, 514 (8th Cir. 1991) (distinguishing Owens as a case where the trial evidence was unclear as to the type of drug involved in the conspiracy); Baker, 16 F.3d at 858 n.4 ("Because the trial

evidence does not permit us to clear up the ambiguity in the verdict, this case is distinguishable from [Watts].").

At the time of the original sentencing, the district court properly grouped all the counts together and determined the sentences based upon the substantive money laundering counts, which were the most serious offenses of conviction. See U.S. Sentencing Guidelines Manual, §§ 3D1.2, 3D1.3 (1995) (describing the method of grouping closely related counts and mandating that the offense level for the group will be the highest offense level of the highest individual count in the group). The base offense level is 23 for a financial transaction under subsection (a)(1)(A)(i), which involves money laundering by promoting a specified unlawful activity. See USSG § 2S1.1(a)(1). In contrast, the base offense level is 20 for a financial transaction under subsection (a)(1)(B)(i), which involves knowing concealment of the proceeds. See USSG § 2S1.1(a)(2). Pursuant to USSG 2X1.1 the base offense level for the conspiracy count would be the same as that determined for the substantive offenses charged as the object of the conspiracy, i.e., embezzlement of bank funds and money laundering. Because the jury found the defendants guilty of the substantive money laundering counts, we have no difficulty in determining that the jury found that money laundering was an object of the convicted conspiracy. Accordingly, the offense level calculation for the conspiracy count would be the same as that for the money laundering counts.

The district court concluded that both types of money laundering alleged -- (1) promoting unlawful activity and (2) concealing the proceeds -- were supported by the evidence offered for each money laundering count. Indeed, the district court was of the opinion that the evidence at trial proved both types of money laundering beyond a reasonable doubt. (Sent. Tr. at 836.) Thus, the district court based its sentencing calculations for the group on a base offense level of 23, the higher offense level of the two types of money laundering.

The money laundering counts controlled the sentencing determination for the whole group of counts involved in this case, except to the extent that the actual sentences which could be imposed on the conspiracy and the false statement counts were capped by a statutory maximum five-year (60-month) sentence applicable to each. 18 U.S.C. §§ 371, 1001.  Although the conspiracy count's calculated offense level was tied to and the same as that determined for the money laundering counts, the existence of the statutory five-year cap also meant that the conspiracy count was of no real consequence in determining the applicable sentencing range for the grouped counts. The calculation of the range for the money laundering counts drove the length of the total punishment to be imposed on the grouped counts.  In other words, the longer statutory maximum sentence available for the money laundering counts (20 years) would accommodate the total punishment indicated by the identified guideline ranges of 78-97 months for defendant Nattier and 63-78 months for defendant Coley on the money laundering counts if the district court was correct in its view that it could determine based on the strength of the trial evidence that the jury was convinced beyond a reasonable doubt that the defendants violated § 1956(a)(1)(A)(i), money laundering through the promotion of the specified unlawful activity, as well as violating § 1956(a)(1)(B)(i), money laundering by concealment of the source of the illegal funds. We have already determined that the evidence was sufficient for the jury to have convicted both defendants of the more serious (a)(1)(A)(i) mode of committing the offense, ante at 5-8, and we have noted that the district judge specifically found at sentencing that the trial evidence proved beyond a reasonable doubt that both types of money laundering had been committed by both defendants.  Our own review of the trial evidence has convinced us that the district judge's observation about the strength of the trial evidence is correct -- we likewise conclude that the trial evidence was so strong on each mode of violation that the jury must have found that the defendants did in fact violate both prongs of § 1956.  Hence we conclude that, like in Watts and Wiggins, the district court was correct in imposing the guidelines sentence based on a violation of the (a)(1)(A)(i) alternative.  It should be remembered that we are dealing with

13

alternative ways of violating a single statute, and that for either way the statute may be violated the maximum potential penalty is the same, i.e., 20 years in prison.

The commentary to USSG § 1B1.2(d), in particular application note 5, lends support to our conclusion. In conspiracy cases where the jury's verdict does not clearly indicate which of two or more offenses were found to be the object of the conspiracy, note 5 authorizes a sentencing judge to impose the sentence based on each object of the offense that the court, were it sitting as the trier of fact, would have convicted the defendant of conspiring to commit. As already mentioned, the district court in this case found that both methods of violating the money laundering statute were proven by evidence beyond a reasonable doubt. Thus, the defendants' challenge to the sentencing ramifications of the ambiguous verdict on the conspiracy count, contending that the two different objects of the conspiracy each yield different base offense levels, does not amount to reversible error. The same is true for their challenge to the sentences imposed on the money laundering counts.

Defendant Nattier also argues that his sentences on the false statement counts were incorrectly determined. He contends that he should have been sentenced on those counts at the lower offense levels which the false statement counts standing alone would generate. His argument is of no avail. First, he made no objection to the grouping of all of his counts of conviction for sentencing purposes as proposed in the presentence investigation report. He can not be heard to complain now absent a showing of plain error. See United States v. Montanye, 996 F.2d 190, 192 (8th Cir. 1993) (en banc). Nattier cannot show plain error because such a grouping was correct. See USSG § 3D1.2(d). Furthermore, the district court's sentencing order was in full compliance with USSG § 5G1.2, Sentencing on Multiple Counts of Conviction, and its commentary providing, "Usually, at least one of the counts will have a statutory maximum adequate to permit imposition of the total punishment as the sentence on that count. The sentence on each of the other counts will then be set at the lesser of the total punishment and the applicable statutory maximum . . . ." As indicated, ante at 13,

14

the 20-year statutory maximum on the money laundering counts accommodated the guidelines range of 78-97 months determined to be the total punishment for Nattier's conduct, and a sentence of 78 months was imposed on Nattier's money laundering convictions. Because the false statement counts carried a five-year statutory maximum punishment, the 60-month sentences on those counts were, in compliance with the quoted commentary, correctly imposed at the lesser of the total punishment (78 months) and the statutory maximum (60 months).

### E. Waiver of Expert

Finally, Coley argues that the government coerced him to withdraw his intent to use an expert witness, in violation of his right to a fair trial. We find no merit in this contention, and Coley's failure to raise this claim before the district court constitutes a waiver. See United States v. Hathcock, 103 F.3d 715, 719 n.4 (8th Cir.), cert. denied, 117 S. Ct. 2528 (1997).

### III.

For the reasons stated, we affirm the judgment of the district court with respect to each defendant.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

15