**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
No. 97-3551EM

| United States of America, | * |  |
|---|---|---|
|  | * |  |
| Appellee, | * |  |
|  | * | On Appeal from the |
| v. | * | United States District Court |
|  | * | for the Eastern District |
|  | * | of Missouri. |
| Albion Norman, | * |  |
|  | * |  |
| Appellant. | * |  |

———————————

Submitted: April 14, 1998
Filed: April 23, 1998

———————————

Before RICHARD S. ARNOLD,[1] Chief Judge, LAY and LOKEN, Circuit Judges.

———————————

RICHARD S. ARNOLD, Chief Judge.

Dr. Albion A. Norman, Jr., was convicted after a jury trial of two counts of wire fraud, in violation of 18 U.S.C. § 1343 (1994), two counts of transportation of stolen property, in violation of 18 U.S.C. § 2314 (1994), four counts of engaging in monetary transactions derived from unlawful activity, in violation of 18 U.S.C. §

———————————

[1]The Hon. Richard S. Arnold stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on April 17, 1998. He has been succeeded by the Hon. Pasco M. Bowman II.

1957 (1994), and seventeen counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (1994). The District Court[2] sentenced Norman to 109 months (12 years and one month) in prison, and he appeals. Norman contends, among other things, that he cannot be found guilty of money laundering because he used his own name and made no effort to conceal his identity in the transactions that are the basis of the money-laundering charges. We reject this contention, as well as other arguments made on appeal, and affirm the convictions and sentence.

Norman's first argument has to do with count VIII, one of the counts charging that he engaged in monetary transactions derived from unlawful activity. This case revolves around funds on deposit in a Florida bank, amounting initially to some $9,225,000.00. It is sufficient for present purposes to know that the evidence tended to show that the money belonged not to Norman but to the Ferncliff Cemetery Association of Hartsdale, New York, and that Norman knew this. (We recount the facts in the light most favorable to the jury's verdict.) Without the authority or knowledge of the true owner, Norman caused or attempted to cause certain funds, amounting ultimately to the entire $9,225,000.00, to be transferred into other accounts under his control.

The particular transaction charged in count VIII was the attempt by Norman to transfer the then-remaining balance in the account, amounting to $7,980,993.78. If the transfer had taken place, the money would have gone to an account in another bank in the name of entities controlled by Norman and his associates. Norman's defense is that the bank in which the funds were originally deposited had asked that this transfer be made. The bank wanted the account closed. Defendant argues that he cannot be guilty of a crime for following the directions of the bank. We disagree. The particular motive or cause that led Norman to attempt the transfer is not material.

---

[2]The Hon. Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

The point is that the money did not belong to Norman, and that he had no authority to direct that it be transferred to an account under his own control.

Norman's next argument has to do with the seventeen money-laundering counts. In order to place the argument in an understandable context, we state the facts of one of these counts. Using part of the money that had earlier been transferred from the account in the Florida bank, Norman bought a blue 1993 Range Rover for $47,790.00. He paid for the car with a check drawn on an account of a business he controlled, and the car was titled in the name of the same business. Norman made no attempt to conceal from the seller of the car his own identity, or the fact that he owned the business that was to become the owner of the car. This absence of concealment, he now argues, prevents him from being convicted of money laundering.

The relevant statute, 18 U.S.C. § 1956(a)(1)(B)(i), provides as follows:

> (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity -
>
> \* \* \*
>
> (B) knowing that the transaction is designed in whole or in part -
>
> > (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; . . .

-3-

The statute does not require that there be any intention or design to conceal the identity of the person dealing with the property. It requires, instead, that a defendant know that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity. There is no contention that the money used to buy the car was not the proceeds of specified unlawful activity. The contention is, rather, that there was no proof that Norman intended to disguise the nature, location, source, ownership, or control of the money. We disagree. The point is not whether the seller of the car is deceived as to who Norman was, but rather that by changing the proceeds of unlawful activity from the form of money (or, more properly, a bank account) -- through the use of other, undisclosed business accounts -- into the form of an automobile, Norman made it more difficult for the true owner of the money to trace what had happened to it.

Under our cases, this is sufficient to make out a violation of the statute. See United States v. Nattier, 127 F.3d 655 (8th Cir. 1997), cert. denied, 66 U.S.L. Week 3655 (U.S. April 6, 1998) (No. 97-8170), where we said:

> Second, Nattier and Coley [the defendants] contend that their actions did not demonstrate an intent to conceal their identity and relationship to the funds because they were readily identifiable as officers of the corporation through which they were spending the funds. Regardless of whether Nattier and Coley attempted to conceal their ownership of or relationship to the funds, their intent to conceal the nature or source of the funds within the meaning of section 1956 (a)(1)(B)(i) was evident. . . .
>
> [E]ven though the defendants did not use false names in an attempt to conceal their identity, they used their legitimate real estate business and Nattier's father in an attempt to

conceal the source of the funds within the meaning of subsection (a)(1)(B)(i). . . .

> In the present case . . . the defendants first deposited the embezzled Mercantile Bank's checks in IRI's business bank account and then invested the illegal proceeds in property by drawing checks on IRI's account, thus representing the illegal proceeds as funds of their legitimate business. Additionally, Nattier transferred some of the illegal funds from IRI's account to the Texas bank account and represented the funds as money borrowed from his father.

Id. at 659.

Norman relies on United States v. Rockelman, 49 F.3d 418 (8th Cir. 1995), but we believe the case is distinguishable. There, the defendant purchased a cabin with cash derived from his drug sales, in person. In contrast, the proceeds of Norman's unlawful activity were held and spent in ways that evidenced the necessary intent to conceal. The money was deposited into three bank accounts held in two names, neither of which was on the Florida bank account known to Ferncliff Cemetery Association. The subsequent purchases were made by checks. They involved automobiles and other goods that were not matters of public record, as the real estate transaction in Rockelman was. Thus, the facts of this case present neither the "straightforward real estate transaction," nor the "conspicuous connection" between the defendant and his purchases, that characterized Rockelman. Id. at 422. Rather, there was sufficient evidence for the jury to find that Norman "intended (at least in part) to disguise the relationship of the item purchased with the person providing the proceeds and that the proceeds were obtained from illegal activities," thus violating the statute. Id. (citation omitted).

Finally, Norman challenges the sentence that was imposed on him. Because all twenty-five counts on which he was convicted related to the same basic series of

transactions, the setting up of the bank account and Norman's diversion or attempted diversion of the contents thereof, the District Court grouped all of the counts for purposes of determining the appropriate offense level under the Sentencing Guidelines. There is no contention that grouping was improper. It is agreed, in addition, that the proper procedure when counts are grouped is to use the offense level of the count or counts that carry the most severe sentence. Here, those counts were the money-laundering charges. The District Court enhanced the offense level on these counts by two levels for obstruction of justice under U.S.S.G. § 3C1.1. This action was based upon the Court's finding, which is not contested on appeal, that Norman perjured himself during his testimony at trial. Norman now argues that this procedure was improper, and that the two-level enhancement should not have been applied, because his perjury at trial related only to the wire-fraud and interstate-transportation counts, and had nothing to do with the laundering counts.

We affirm the District Court's obstruction-of-justice enhancement. Contrary to Norman's assertions, his perjury was relevant to the money-laundering counts. Title 18 U.S.C. § 1956(a)(1)(B)(i) requires the defendant to know that the financial transaction at issue involves the proceeds of unlawful activity. The Court found that Norman lied about his understanding of the ownership of the money in the Florida bank account, among other things. This information was therefore relevant to the jury's determination of whether Norman was guilty of money-laundering, and Norman's perjury was an obstruction of justice "during the . . . prosecution . . . of the instant offense." U.S.S.G. § 3C1.1 (1997).

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.