# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3286

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| David Alan Shoff, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  March 10, 1998
Filed:  August 12, 1998

_____

Before WOLLMAN and LOKEN, Circuit Judges, and BATAILLON,[*] District Judge.

_____

LOKEN, Circuit Judge.

David Alan Shoff persuaded relatives, friends, and even investment professionals that he would profitably invest their money in securities such as stock options.  Shoff instead used his clients' money for gambling and other personal expenses.  He kept the fraudulent scheme alive for a number of years by providing client statements falsely reporting substantial investment profits, and by creatively evading inquiries from his more skeptical victims.  Shoff was eventually indicted and convicted on thirteen counts

_____

[*]The HONORABLE JOSEPH F. BATAILLON, United States District Judge for the District of Nebraska, sitting by designation.

of mail fraud and two counts of money laundering.  He appeals his conviction and fifty-month prison sentence.  We reverse the money laundering conviction and remand for resentencing.

## I.  The Money Laundering Issue.

Shoff argues the government's evidence was insufficient to convict him of violating 18 U.S.C. § 1956(a)(1)(B), which defines one type of money laundering:

> (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts . . . a financial transaction which in fact involves the proceeds of specified unlawful activity --
>
> \* \* \* \* \*
>
> (B) knowing that the transaction is designed in whole or in part (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . .

Viewing the evidence in the light most favorable to the verdict, we reverse only if no reasonable jury could have found each element of this offense beyond a reasonable doubt.  See United States v. Rounsavall, 115 F.3d 561, 565 (8th Cir.), cert. denied, 118 S. Ct. 256 (1997).

The money laundering counts were based upon two automobile purchases.  The government presented many witnesses to establish the fraudulent nature of Shoff's investment scheme, but its evidence of money laundering was limited to the following.  First, in October 1993, Shoff received a $30,000 check from his cousin's wife, payable to Shoff personally.  He deposited the check into a newly-opened checking account in the name of Shoff Trading Limited.  Four days later, he wrote a check on that account to purchase a $17,290 money order payable to a local car dealer.  The bank's records

list Shoff as purchaser of the money order. He used the money order to purchase a 1989 Mercedes. Second, in January 1996, a client invested $150,000 with Shoff by wiring the money, at Shoff's direction, into a Shoff Trading checking account. A few days later, Shoff wrote a check on that account to purchase a $28,400 cashier's check payable to a local car dealer. The cashier's check listed Shoff as the remitter.[1] He used the cashier's check to purchase a 1992 Mercedes. Shoff concedes the car purchases were "financial transactions" involving proceeds of his unlawful fraud. The issue is whether these transactions were "designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of [those] proceeds."

The concealment portion of the money laundering statute is broadly worded, and concealment -- that is, not telling the victim what is really going on -- is an essential feature of all schemes to defraud. The government's position on appeal is, in essence, that all schemes to defraud people of money therefore include an element of money laundering. We reject that notion. Money laundering is a separate crime with its own statutory elements. For sentencing purposes, the base offense level for money laundering is much higher than the base offense level for fraud. Compare U.S.S.G. § 2S1.1(a), with § 2F1.1(a). To warrant imposing the enhanced sentence for money laundering, the government must prove the defendant conducted financial transactions that were themselves designed to conceal some relevant aspect of his use of the fraud proceeds. Cf. United States v. Hildebrand, 1998 WL 420504, at *4-5 (8th Cir. 1998). As prior cases illustrate, this is often a difficult line to draw.

We begin by comparing this case with the financial transactions involved in cases that have upheld money laundering convictions. In United States v. Norman,

---

[1]A remitter is a person to whom a negotiable instrument payable to another is issued. When the remitter delivers the instrument, the payee becomes a holder. See WEBER & SPEIDEL, COMMERCIAL PAPER IN A NUTSHELL 103 (3d ed. 1982).

-3-

1998 WL 191147, at *2-3 (8th Cir. 1998), the defendant transferred fraud proceeds out of an account of which the victims were aware and had some control, into other accounts controlled by the defendant from which he secretly converted the proceeds to his personal use. Citing Norman, the government argues the fraud victims would not have consented to Shoff using their money to buy cars; therefore, any payment mechanism other than endorsing their checks directly to the car dealers was designed to conceal this use of the proceeds from the victims. Of course, endorsing victim checks to car dealers -- an impractical hypothetical because few dealers would accept payment in this fashion -- affirmatively discloses how the proceeds have been spent. A money laundering violation requires proof of concealment, not the absence of full disclosure. Here, Shoff's victims did not care where he initially deposited their funds. They transferred the money to him personally or at his direction, relying on his representation that he would invest, not on their ability to supervise or control his use of the proceeds. Shoff certainly concealed the fact that he was converting *all* their money to his personal use. But the open manner in which he used some of the proceeds to purchase two cars was no more designed to help conceal this fraud than the fact that he spent most of the rest of the proceeds at casinos to finance his fondness for gambling.

Another common type of money laundering involves the commingling of illegal proceeds with the identity or the funds of a legitimate and usually preexisting business. See, e.g., United States v. Nattier, 127 F.3d 655, 659 (8th Cir. 1997), cert. denied, 118 S. Ct. 1398 (1998); United States v. Termini, 992 F.2d 879, 881 (8th Cir. 1993); United States v. Posters 'N' Things, Ltd., 969 F.2d 652, 661 (8th Cir. 1992), aff'd, 511 U.S. 513 (1994). Such commingling effectively conceals the nature, source, ownership, and/or control of the unlawful proceeds. Here, the government relies on Shoff's decision to deposit investor moneys into a Shoff Trading business account, rather than a personal account. But there was no proof that he thereby commingled fraud proceeds with moneys used for legitimate investment or trading activities. The Shoff Trading account was never part of a legitimate business; it was pure fraud.

Still another common type of money laundering is the transfer of unlawful proceeds into an account in another person's name, as in <u>Nattier</u>, 127 F.3d at 659, or the use of such proceeds to buy assets in another person's name, as in <u>United States v. Garcia-Emanuel</u>, 14 F.3d 1469, 1478 (10th Cir. 1994), and <u>United States v. Lee</u>, 886 F.2d 998, 1003 (8th Cir. 1989), <u>cert. denied</u>, 493 U.S. 1032 (1990). Here, on the other hand, Shoff personally purchased the cars, both were titled in his name, and he drove them conspicuously. The government argues Shoff's use of a money order and certified check concealed from the car dealers "that he was using something other than personal funds to purchase the two Mercedes." Of course, it is not unusual for a car dealer to require payment in guaranteed funds before delivering an expensive vehicle. <u>See</u> <u>United States v. Lovett</u>, 964 F.2d 1029, 1036 (10th Cir.), <u>cert. denied</u>, 506 U.S. 857 (1992). Therefore, an intent to conceal from the dealers cannot be inferred from Shoff's use of funds under his exclusive control and easily traceable to the Shoff Trading account. <u>See</u> <u>United States v. Rockelman</u>, 49 F.3d 418, 422 (8th Cir. 1995).

From this review, it is apparent the government offered no particularized proof of the "designed to conceal" element of a § 1956(a)(1)(B) violation. There was proof Shoff spent his clients' money on cars, but the money laundering statute may not be so broadly construed that it becomes a "money spending statute." <u>See</u> <u>United States v. Herron</u>, 97 F.3d 234, 237 (8th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 998 (1997), and <u>Rockelman</u>, 49 F.3d at 422, citing <u>United States v. Sanders</u>, 929 F.2d 1466, 1472 (10th Cir.), <u>cert. denied</u>, 502 U.S. 846 (1991). The government distinguishes these cases because they involved the use of illegal drug proceeds, not schemes to defraud. Drug users do not care how drug dealers spend unlawful proceeds, the government explains, whereas Shoff held his clients' funds in trust for their benefit. But that theory simply equates fraudulent conversion with money laundering. Shoff's clients transferred money to him without restriction, relying on his promises to invest and the phony account statements he provided. That he fraudulently spent their money to buy groceries, or to buy cars, or to gamble at casinos was not the additional crime of money laundering absent proof that the spending transactions were themselves designed to

conceal some relevant aspect of his use of the fraud proceeds.  As the government failed to present such additional proof, Shoff's conviction of money laundering must be reversed.

## II.  A Fraud Sentencing Issue.

Shoff argues the district court erred in including a $99,984 wire deposit into a Shoff Tradings bank account in calculating the amount of fraud loss, see U.S.S.G. § 2F1.1(b)(1), and in fashioning a restitution order.  Because we have reversed his money laundering conviction, this issue will affect Shoff's base offense level at resentencing, as well as the amount of restitution.

The deposit in question was wired from a Shanghai bank by Thirsk, Incorporated. The presentence investigation report found that Thirsk was an offshore investor who was defrauded, even though no government witness identified Thirsk at trial.  Shoff timely objected to this PSR finding.  The government introduced no additional evidence concerning Thirsk at the sentencing hearing.  The district court overruled Shoff's objection because "relevant conduct for purposes of sentencing can mean things other than occurred at trial.  And for those reasons the findings as made in the [PSR] are accepted and adopted."  This was error because a PSR to which the defendant has objected may not be evidence at sentencing.  See, e.g., United States v. Burke, 80 F.3d 314, 316-17 (8th Cir. 1996).  On appeal, the government argues the trial evidence was sufficient to support the district court's finding.  But the district court did not base its finding on the trial evidence.  Therefore, this issue must be addressed again at resentencing, with the government bearing its customary burden of proof by a preponderance of the evidence.  We leave to the district court's discretion whether to permit additional evidence on the issue at resentencing.

## III. Other Issues.

Shoff moved for leave to file a *pro se* supplemental brief, arguing that his counsel overlooked reversible errors in the trial transcript and those issues will be procedurally barred unless he is permitted to raise them. Because issues of trial error are usually barred unless raised on direct appeal, we granted the motion and now consider the issues raised in Shoff's *pro se* brief.

Shoff first argues his conviction was tainted by prosecutor misconduct in labeling him a "con man" in opening statement, and in asserting in closing argument that he "exhibits all the signs of a liar" and "is still making false representations to [the jury] today." Because Shoff did not raise this issue at trial, we review only for plain error. The prosecutor's opening was limited to describing what the government would attempt to prove. The use of colorful pejoratives is not improper. See United States v. Rude, 88 F.3d 1538, 1547-48 (9th Cir. 1996), cert. denied, 117 S. Ct. 690 (1997). Likewise, the prosecutor's closing was carefully limited to arguing what the evidence had proved, rather than improperly expressing the prosecutor's personal opinion. See United States v. French, 88 F.3d 686, 688 (8th Cir. 1996). There was no misconduct.

Shoff next argues his Fifth Amendment privilege against self-incrimination was violated when the prosecutor elicited testimony from a United States Postal Inspector that during a noncustodial, prearrest interview Shoff had declined to identify Thirsk, Incorporated. The district court sustained Shoff's objection to that testimony, cautioned the jury to disregard it, but refused to instruct the jury that the prosecutor acted improperly in eliciting it. This was not an abuse of the court's substantial discretion. Cf. United States v. Davenport, 929 F.2d 1169, 1174-75 (7th Cir. 1991) ("[t]he privilege against self-incrimination is not a privilege to attempt to gain an advantage in the criminal process, whether in its investigatory or its trial stage, by selective disclosure followed by a clamming up"), cert. denied, 502 U.S. 1031 (1992).

Shoff next argues the prosecutor in closing argument improperly commented on Shoff's failure to call his former partner as a witness and improperly suggested the government could have called many more witnesses. We disagree. The comments were a fair response to Shoff's own reference to these uncalled witnesses in his opening statement and closing argument. Moreover, in response to Shoff's objections, the district court instructed that the defense has no burden to produce witnesses and the burden of proof "rests firmly with the government." See United States v. Neumann, 887 F.2d 880, 886-87 (8th Cir. 1989), cert. denied, 495 U.S. 949 (1990).

Finally, we reject Shoff's contention that the district court abused its discretion in concluding that a brief conversation between two witnesses was not a prejudicial violation of the court's witness sequestration order.

The judgment of the district court is reversed insofar as it convicts Shoff of money laundering, and the case is remanded for resentencing.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-