# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1960

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Western |
| Ray L. Bowman, | * | District of Missouri. |
| Also Known as Ray Delamotte, | * | |
| Lewis Bowman, Charles Clark, | * | |
| and G. L. Bowman, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 12, 2000

Filed: December 28, 2000

_____

Before HANSEN, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Ray Bowman pleaded *nolo contendere* to six counts of money laundering, *see* 18 U.S.C. § 1956(a)(1)(B)(i), and three counts of aiding and abetting money laundering, *see id.*, *see also* 18 U.S.C. § 2(a). He also pleaded *nolo contendere* to two counts of structuring a financial transaction so as to avoid federal transaction reporting requirements, *see* 18 U.S.C. § 1956(a)(1)(B)(ii). Under Mr. Bowman's plea agreement with the government, both parties stipulated to certain facts and agreed that if, as a

matter of law, those facts did not constitute the offenses charged, Mr. Bowman could withdraw his plea. *See* Fed. R. Crim. P. 11(a)(2); *see also* Fed. R. Crim. P. 11(e)(3), Fed. R. Crim. P. 12(b)(2).

Subsequent to his plea hearing, Mr. Bowman moved to dismiss the relevant indictment, contending that the stipulated facts did not, as a matter of law, constitute the offenses charged. The district court denied the motion and sentenced Mr. Bowman to 77 months of imprisonment. Mr. Bowman appeals the denial of his motion. We affirm the judgment of the district court [1] with respect to nine counts of the indictment but vacate Mr. Bowman's plea with respect to two counts and remand the case for further proceedings consistent with this opinion.

I.

One provision of the money laundering statute, *see* 18 U.S.C. § 1956(a)(1)(B)(i), makes it a crime for a person to conduct a financial transaction, with proceeds that he or she knows came from unlawful activity, in circumstances where the person also knows that the financial transaction is designed to conceal or disguise the nature, the source, or the ownership of those proceeds. This provision applies to nine counts of the indictment.

With respect to six of those counts, Mr. Bowman stipulated that he committed five bank robberies[2] between late 1987 and early 1997, that he obtained approximately $5,225,000 in cash from those robberies, and that law enforcement authorities subsequently recovered a total of approximately $1,640,000 in cash from multiple

---

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

[2]Mr. Bowman was prosecuted and convicted in the state of Washington for one of the robberies. His conviction was upheld on appeal. *See United States v. Bowman*, 215 F.3d 951 (9th Cir. 2000).

safe-deposit boxes rented in his name. The essence of Mr. Bowman's argument in regard to these six counts is that using safe-deposit boxes rented in his own name does not amount to the type of "substantial evidence of a design ... [or] intent to conceal," *United States v. Garcia-Emanuel*, 14 F.3d 1469, 1475 (10th Cir. 1994), that the statute requires. We disagree.

Mr. Bowman lives in Kansas City, Missouri. All five of the bank robberies took place outside Missouri, and Mr. Bowman opened at least one new safe-deposit box outside Missouri within two days of each of the second, third, and fourth robberies. In addition, during the period of the robberies, he had access to at least ten other safe-deposit boxes. Within approximately a month of each robbery except the third, Mr. Bowman visited various of the safe-deposit boxes at least seven times; within three weeks of the third robbery, Mr. Bowman visited two separate boxes. The pattern of visits after all but the first robbery, moreover, shows an initial visit to a safe-deposit box outside Missouri and subsequent visits to boxes in Kansas City. All of the visits after the first robbery were to boxes in Kansas City.

From this evidence, we believe that a reasonable jury could infer that after each robbery, Mr. Bowman deposited at least some of the proceeds into one of his safe-deposit boxes and then, within a very short interval, shifted at least some of that deposit into and out of various other boxes. We also believe that the pattern and timing of the initial box rentals and all of the box visits, in association with each individual robbery, would allow a reasonable jury to infer that Mr. Bowman was deliberately moving the proceeds around so as to make tracking the money difficult. *See*, *e.g.*, *United States v. Posters 'N' Things, Ltd.*, 969 F.2d 652, 661 n.7 (8th Cir. 1992), *aff'd*, 511 U.S. 513 (1994). Those inferences support our conclusion that substantial evidence exists to show that Mr. Bowman had the intent to conceal not only the ownership of the money in question but also its nature, namely, that it was stolen, and the fact that he possessed it. With respect to six of the counts related to money laundering, therefore, we reject

Mr. Bowman's argument that the facts to which he stipulated are inadequate, as a matter of law, to show an intent to conceal information about the money in question.

## II.

With respect to a seventh count under the same provision of the money laundering statute, *see* 18 U.S.C. § 1956(a)(1)(B)(i), Mr. Bowman stipulated that, in 1997, he deposited approximately $18,600 in cash into his girlfriend's checking account, the majority of which she withdrew to pay for school, housing, and various personal expenses. In regard to this count, Mr. Bowman argues that financing his girlfriend's checking account does not amount to "substantial evidence of a design ... [or] intent to conceal," *Garcia-Emanuel*, 14 F.3d at 1475, the nature, the source, or the ownership of proceeds from the bank robberies.

At least two circuits have held that a design or intent to conceal the nature, the source, or the ownership of unlawfully obtained proceeds may be inferred when a defendant transfers those proceeds into the control of others with whom the defendant has a very close relationship. *See*, *e.g.*, *United States v. Short*, 181 F.3d 620, 626 (5th Cir. 1999), *cert. denied*, 120 S. Ct. 825 (2000), and *United States v. Stephenson*, 183 F.3d 110, 120 (2d Cir. 1999), *cert. denied*, 120 S. Ct. 517 (1999). It is the transformation of unlawfully gained cash into another form – in this case, the checking account of Mr. Bowman's girlfriend, and then into the items that she bought – that evinces the design to conceal. *See*, *e.g.*, *United States v. Norman*, 143 F.3d 375, 377 (8th Cir. 1998). We therefore reject Mr. Bowman's contention that, as a matter of law, the stipulated facts in this instance are insufficient to amount to money laundering.

## III.

The remaining two counts under the same provision of the money laundering statute, *see* 18 U.S.C. § 1956(a)(1)(B)(i), involve a corporate checking account that was established by another person in April, 1995. Mr. Bowman stipulated that the corporation itself ceased doing business roughly five months later but that during the

three years after the account was established, he deposited approximately $20,100 in cash into the account. Throughout that three-year period, the holder of the corporate account wrote checks to Mr. Bowman amounting to approximately $19,800.

Mr. Bowman also stipulated that in 1995 the holder of the corporate account bought a 1995 car for approximately $24,400, then titled, financed, and insured the car in his own name rather than that of Mr. Bowman, and used checks from the corporate account to pay the loan installments. Mr. Bowman provided in cash, however, all of the money that the holder of the corporate account used to pay for the car. Mr. Bowman was, moreover, the sole driver of the car.

Mr. Bowman makes no specific argument – in his original motion to dismiss, his appellate brief, or his oral argument – about these transactions. Presumably his position is that an intent to conceal may not reasonably be inferred either from the act of depositing money into another's checking account and then receiving payments from that account totaling roughly the same amount, or from the act of providing cash to another that totals approximately the same sum as the aggregated checks that the other person uses to buy a car that is driven solely by the person who provided the money. If indeed this is Mr. Bowman's position, we reject it.

Depositing unlawfully obtained money into a "seemingly legitimate business account ... and passing [the money] off as funds of a legitimate business," *United States v. Nattier*, 127 F.3d 655, 659 (8th Cir. 1997), *cert. denied*, 523 U.S. 1065 (1998), is sufficient evidence to allow a reasonable jury to conclude that Mr. Bowman intended to conceal the stolen nature of the money and its true ownership. *See also United States v. Termini*, 992 F.2d 879, 881 (8th Cir. 1993). Using unlawfully obtained cash to buy a car that Mr. Bowman exclusively possessed and drove, which was ostensibly purchased by the holder of the corporate account with checks from that account, is also sufficient evidence to allow a reasonable jury to conclude that Mr. Bowman intended to conceal the stolen nature of the cash, the fact that he provided it to use for buying

the car, and the true ownership of the cash. *See*, *e.g.*, *Norman*, 143 F.3d at 377; *cf. United States v. Baker*, 985 F.2d 1248, 1251-54 (4th Cir. 1993), *cert. denied*, 510 U.S. 1040 (1994). *See also United States v. Green*, 225 F.3d 955, 960 (8th Cir. 2000). We therefore reject Mr. Bowman's argument, if indeed it is his argument, that the stipulated facts in regard to the relevant corporate checking account are insufficient to amount to money laundering.

IV.

A different provision of the money laundering statute, *see* 18 U.S.C. § 1956(a)(1)(B)(ii), makes it a crime for a person to conduct a financial transaction, with proceeds that he or she knows came from unlawful activity, in circumstances where the person also knows that the financial transaction is designed to avoid federal transaction reporting requirements. This provision applies to two counts of the indictment against Mr. Bowman.

With respect to the first of these counts, Mr. Bowman stipulated that in September, 1996, he bought a 1992 sport utility vehicle for approximately $12,000. He further stipulated that on the day of the purchase he paid $100 in cash, that a day later he paid $2,000 in cash, a cashier's check for $4,450 drawn from the corporate account discussed earlier, and a second cashier's check for $4,600 from the same account, and that three days after that, he paid approximately $850 in the form of a check from his girlfriend's checking account.

With respect to the second of these counts, Mr. Bowman stipulated that in February, 1997, a friend bought a 1996 sport utility vehicle for $23,500, apparently titled and financed it in his own name, and paid off the loan for it with four cashier's checks, the greatest of which was for $6,000, each of which was obtained on a separate day, and each of which was obtained within five days of a cash payment from Mr. Bowman to his friend.

Mr. Bowman's argument in regard to these two counts is not altogether clear to us, but apparently consists of the assertion that it was either the seller of the vehicle, the bank that drew the cashier's checks, or possibly the friend, who had the obligation under federal law to report any relevant financial transactions – presumably, in this case, the exchange of $23,500 for the vehicle and the execution of the cashier's checks in amounts of $6,000 or less. This argument misses the point by a long shot. What the money laundering statute prohibits is not the failure to report a certain type of transaction, *see*, *e.g.*, 26 U.S.C. § 6050I(a), 31 U.S.C. § 5311, § 5313(a), but the purposeful structuring of such a transaction so as to make it appear that no reporting requirement is applicable.

Strangely, the indictment lacks any specificity with respect to the type of transaction by Mr. Bowman for which reporting was allegedly required, or even what statutes require reporting of some kind, and therefore the reporting requirements that Mr. Bowman allegedly sought to avoid. Neither party addressed this question in the district court briefs on Mr. Bowman's motion to dismiss. In its appellate brief, the government cites 31 U.S.C. § 5313(a) as the statute requiring transaction reporting. That statute mandates that a "domestic financial institution" must report to the federal government any cash transaction involving an amount specified by the relevant regulations, *see* 31 C.F.R. § 103.22(b)(1), in this case, $10,000 or more.

We need not explore, however, the issue of the applicable statute, who had the duty to report, what amount was required to be reported, or what type of conduct amounts to a transaction that triggers a duty to report. This is because one of the elements of the "structuring" offense is the defendant's knowledge that the law requires certain transactions to be reported. *See*, *e.g.*, *United States v. Young*, 45 F.3d 1405, 1413 (10th Cir. 1995), *cert. denied*, 515 U.S. 1169 (1995); *cf. United States v. Griffin*, 84 F.3d 912, 925-26 (7th Cir. 1996), *cert. denied*, 519 U.S. 999, 1020 (1996). Nothing in Mr. Bowman's stipulations addresses his knowledge with respect to any federal transaction reporting requirements. Without such evidence, we cannot say that a

reasonable jury could infer, without a reasonable doubt, that Mr. Bowman knew of any relevant transaction reporting requirements.

None of the authority that the government cites is on point relative to this part of Mr. Bowman's case. In four of the cited cases, there was direct evidence that the defendant (or a co-defendant who pleaded to the "structuring" offense and with whom the defendant had many conversations to decide how to arrange the transfer of cash) knew about the relevant transaction reporting requirements. *See United States v. Walcott*, 61 F.3d 635, 636, 636 n.3, 638 (8th Cir. 1995), *cert. denied*, 516 U.S. 1132 (1996); *United States v. Mitchell*, 31 F.3d 628, 630, 632-33 (8th Cir. 1994), prosecuted under 31 U.S.C. § 5324(a)(3) rather than under 18 U.S.C. § 1956(a)(1)(B)(ii); *United States v. Goff*, 20 F.3d 918, 920 (8th Cir. 1994), *cert. denied*, 513 U.S. 987 (1994); and *United States v. Patino-Rojas*, 974 F.2d 94, 95 (8th Cir. 1992) (*per curiam*), *cert. denied*, 507 U.S. 974 (1993). The fifth case that the government cites discusses only the evidence of the defendant's involvement in the financial transaction in question and is silent with respect to the issue of the defendant's knowledge of the relevant transaction reporting requirements. *See United States v. Morales*, 108 F.3d 1213, 1221-22 (10th Cir. 1997).

Because Mr. Bowman's stipulations do not include enough information for a reasonable jury to infer, without a reasonable doubt, that he knew of any relevant transaction reporting requirements, we vacate his plea of *nolo contendere* to the two "structuring" counts and remand that part of the case to the district court for further proceedings consistent with this opinion.

HANSEN, Circuit Judge, concurring in part and dissenting in part.

I concur in all of the court's opinion except for its discussion and disposition of Counts 10 and 11 of the Indictment, the so-called "structuring" counts. In my view, our court reaches too far when it grants relief on a claim (a lack of specific knowledge of

the regulation involved) which was neither advanced nor argued by the appellant in either his brief to this court or at oral argument.  Because I would affirm all of the appellant's convictions,  I respectfully dissent from the court's disposition of the two "structuring" counts.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.