# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2771

_____

United States of America,

        Appellee,

v.

Audrey Joan Phythian, also known as
Audrey Joan Goossen,

        Appellant.

\* Appeal from the United States
\* District Court for the
\* District of Minnesota.

_____

Submitted: April 14, 2008
Filed: June 23, 2008

_____

Before WOLLMAN, BEAM, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

After a jury trial, Audrey Joan Phythian (Phythian) was convicted on all counts of a nine count indictment—three counts of theft or embezzlement in connection with healthcare, three counts of money laundering, and three counts related to her receipt of social security disability benefits. The district court[1] sentenced Phythian to concurrent 52-month sentences on each count. Phythian appeals her conviction

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

asserting there was insufficient evidence to support her conviction on any of the counts. Finding sufficient evidence to support each count and no error, we affirm.

## I.   BACKGROUND

During the 1980s, Phythian operated a medical billing business. In August, 1985, Phythian was excluded from participation in the Medicare and Medicaid health insurance program because of a prior criminal conviction related to defrauding the Medicaid program. Her debarment prohibited Phythian from submitting claims to the Medicare or Medicaid programs on behalf of healthcare providers.[2]

In approximately 2000, Phythian and her husband, Milt Goossen (Goossen), purchased a medical billing business doing business as Progressive Health Care Management (PHCM). Goossen was registered as the business's manager; however, Goossen never had any involvement with PHCM in any capacity, and Goossen failed to disclose this fact in an April 2005 report to the Social Security Administration (SSA). In fact, Phythian oversaw PHCM's day to day operations, opened and maintained PHCM's business bank account with Preferred Bank and was listed, along with Goossen, as an owner of this account. Goossen was incapable of managing a bank account, so Phythian effectively controlled this account.[3]

Phythian employed her son, Jeff Gusciora (Gusciora) to do menial tasks for PHCM including making deliveries to and pickups from PHCM's clients. Gusciora described himself as a "gopher" running errands. Gusciora also made bank deposits

---

[2]The exclusion was for ten years. After ten years, Phythian was eligible for reinstatement, but she never sought reinstatement. As such, Phythian is still excluded from submitting claims.

[3]Goossen also applied for social security disability benefits. On Goossen's behalf, Phythian completed a benefit application report dated April 22, 2005, stating Goossen was unable to use a check book or handle a savings account because "I forget and double pay, [and] lose the check books and account books."

for PHCM. Phythian would prepare envelopes with checks and deposit slips for Gusciora with instructions on the envelopes specifying the accounts into which Gusciora was to deposit the checks. Gusciora characterized his computer work as "idiot work."

Phythian, through PHCM, contracted with healthcare providers to process and submit health insurance claims on behalf of the healthcare providers. Among the healthcare providers contracting with PHCM for this service were Mark Wheaton (Wheaton), Peter J. Dorsen (Dorsen), and Steven D. Moe (Moe). Wheaton and Dorsen were authorized Medicare providers providing healthcare services to Medicare and Medicaid beneficiaries. The healthcare providers would give PHCM information about the medical services and benefits provided to patients, as well as the patients' identifying information, descriptions of the services provided to the patients and the dates of service. PHCM then submitted claims for reimbursement on behalf of the providers to health insurance programs including Medicare, Medicaid and private payors. The health insurance programs would then pay the submitted claims with checks made payable to the healthcare providers, which were delivered either to the providers or to PHCM. When checks were sent to PHCM, PHCM was responsible for either delivering the checks to the provider or depositing the checks directly into the provider's bank account. Phythian and PHCM were not authorized to deposit the reimbursement checks into PHCM's bank account.

Without the knowledge or authorization of the healthcare providers, certain funds of the healthcare providers were embezzled and deposited into PHCM's bank account. Phythian then wrote checks, drawn on the PHCM account, to Goossen totaling over $100,000. Phythian deposited the checks written to Goossen into a Wells Fargo bank account jointly owned by Phythian and Goossen. Next, Phythian cashed checks drawn on the Wells Fargo account at casinos or made ATM withdrawals from the Wells Fargo account and gambled with the money, all without Goossen's knowledge.

In addition to the PHCM business, Phythian and Goossen also owned and operated AM Antiques from February 2001 through July 2004. AM Antiques sold antiques in an antiques mall, continuing operations until the antiques mall ceased operations in July 2004.

In April 2000, Phythian applied for social security disability insurance (SSDI), claiming she was unable to work beginning in April 1999. Her application for benefits was denied. Phythian reapplied for SSDI in August 2003, claiming a disability onset date of September 30, 2000—the date Phythian asserts she was no longer able to work. The SSA approved Phythian's application for SSDI benefits and paid Phythian a lump sum of $17,050 for back benefits and monthly payments of approximately $1,140 which continued until March 2006. From April 2000 until March 2006, SSA periodically required Phythian to disclose whether she had been working or currently was working. Phythian always denied working. In 2006, the SSA reopened Phythian's application to consider denying benefits. Phythian certified she had not been working since July 1, 2003. On March 7, 2006, the SSA terminated Phythian's SSDI benefits, concluding she had been working.

On February 22, 2006, a federal grand jury returned a nine-count indictment against Phythian charging her with embezzlement from healthcare providers in violation of 18 U.S.C. §§ 669 and 24(b), money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and social security disability insurance fraud in violation of 42 U.S.C. § 408(a)(3) and (4). On February 9, 2007, after a three day trial, the jury returned a verdict finding Phythian guilty on all counts. This appeal follows.

## II.    DISCUSSION

Phythian asserts there was insufficient evidence presented at her jury trial to allow a reasonable jury to convict her of any of the nine counts of the indictment. This court reviews the sufficiency of the evidence supporting a conviction de novo,

"viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Washington, 318 F.3d 845, 852 (8th Cir. 2003) (citing United States v. Grimaldo, 214 F.3d 967, 975 (8th Cir. 2000)). "[W]e reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Pruneda, 518 F.3d 597, 605 (8th Cir. 2008).

### A. Conversion of Funds—Embezzlement

Counts 1 though 3 of the indictment alleged Phythian embezzled funds from Wheaton, Dorsen, and Moe in violation of 18 U.S.C. § 669. This statute applies to a person who "knowingly and willfully embezzles, steals, or . . . converts to the use of any person other than the rightful owner, or intentionally misapplies any of the moneys, funds, . . . or other assets of a health care benefit program." 18 U.S.C. § 669. This statute only requires proof of embezzlement or conversion, and does not, as asserted by Phythian, require proof of forgery.

The evidence adduced at trial established Phythian managed PHCM's financial affairs, controlling the receipt and deposit of checks. Phythian had reimbursement checks made out to healthcare providers deposited into accounts controlled by PHCM. This was done without any authority to do so. Goossen may have owned PHCM, but Goossen testified he never managed PHCM, was not employed by PHCM, and Phythian handled all PHCM's financial matters. Although Phythian's son, Gusciora, physically made the deposits into the PHCM bank accounts, he did so having received the checks from Phythian, which checks had already been falsely and fraudulently endorsed, together with deposit slips in envelopes prepared by Phythian directing Gusciora to deposit the checks into accounts specified by Phythian. Further, the evidence demonstrated Phythian gambled away most of the funds after engaging in numerous financial transactions, involving multiple bank accounts, which acted to conceal the transactions from Phythian's husband, Goossen. This evidence was more than sufficient for a reasonable jury to find Phythian embezzled funds.

**B. Social Security—False Statements and Concealment of Facts**

Counts 4 through 6 allege Phythian knowingly concealed her true physical condition and capabilities from the SSA and made false statements to the SSA in violation of 42 U.S.C. § 408(a)(3) and (4).

**1. Count 4**

Count 4 charged Phythian with concealing information from the SSA in violation of § 408(a)(4). This statute applies to any person

> having knowledge of the occurrence of any event affecting (1) his initial or continued right to any payment under this subchapter, or (2) the initial or continued right to any payment of any other individual in whose behalf he has applied for or is receiving such payment, conceals or fails to disclose such event with an intent fraudulently to secure payment either in a greater amount than is due or when no payment is authorized.

42 U.S.C. § 408(a)(4).

> The government must prove the following: (1) [Phythian] had knowledge of an event affecting [her] right to receive or to continue to receive payments; (2) [Phythian] knowingly concealed or failed to disclose this event to the [SSA]; and (3) [Phythian] concealed or failed to disclose this event with the intent to fraudulently secure payment of Social Security disability benefits in an amount greater than was due [her] or when no payment to [her] was authorized.

United States v. Baumgardner, 85 F.3d 1305, 1310-11 (8th Cir. 1996) (citing United States v. Phillips, 600 F.2d 535, 536 (5th Cir. 1979)). At trial, both Phythian's husband and son testified Phythian managed PHCM and maintained the books for both PHCM and AM Antiques. Further, Wheaton, Dorsen, and Moe all testified Phythian worked at PHCM and was their principal point of contact. The SSA advised Phythian on multiple occasions that she needed to report any work, even self employment, but Phythian never reported working. As such, a reasonable jury easily

could find Phythian concealed her work from the SSA intending to secure SSDI payments fraudulently.

Phythian's assertion the evidence did not support a finding she fraudulently intended to secure payment is unavailing. "Intent frequently cannot be proven except by circumstantial evidence; the determination [of intent] often depends on the credibility of witnesses, as assessed by the factfinder." United States v. Henderson, 416 F.3d 686, 692 (8th Cir. 2005) (citation omitted). The jury may infer Phythian's intent from her conduct—failing to report she was working while managing PHCM and AM Antiques and serving as the primary point of contact for Wheaton, Dorsen, and Moe. Reviewing the evidence in the light most favorable to the verdict, a reasonable jury could readily find Phythian violated § 408a(4).

### 2.    Counts 5 and 6

Counts 5 and 6 alleged Phythian violated 42 U.S.C. § 408(a)(3), which makes it an offense "any time [to] make[] or cause[] to be made any false statement or representation of a material fact for use in determining rights to payment [of SSDI benefits]." Count 5 charged Phythian with falsely stating in 2003 she was not working and was unable to work. Count 6 charged Phythian with falsely stating in 2006 she had not done any work since she became disabled, that she was not then working, and that she was unable to work.

Phythian incorrectly asserts the government needed to prove she was ineligible to receive SSDI. Rather, the government was only required to prove Phythian's statements were materially false. See 42 U.S.C. § 408(a)(3) (making it an offense to make "any false statement or representation of a material fact."). A statement is material if it has "a natural tendency to influence or was capable of influencing the government agency or official." United States v. Baker, 200 F.3d 558, 561 (8th Cir. 2000) (citing United States v. Gaudin, 515 U.S. 506, 509 (1995)). Phythian's statements clearly had "a natural tendency to influence" the SSA in making its

eligibility determination, as the ability to work is critical to the SSA's determination. Phythian's statements to the SSA that she was not working, and failing to report she was working, were false and material representations and omissions. As such, sufficient evidence supports the jury's verdict.

### C. Concealment—Money Laundering

Counts 7 through 9 of the indictment charged Phythian with knowingly depositing checks payable to another person in violation of 18 U.S.C. § 1956(a)(1)(B)(i). There are four elements to this offense: (1) defendant conducted, or attempted to conduct a financial transaction which in any way or degree affected interstate commerce or foreign commerce; (2) the financial transaction involved proceeds of illegal activity; (3) defendant knew the property represented proceeds of some form of unlawful activity; and (4) defendant conducted or attempted to conduct the financial transaction knowing the transaction was "designed in whole or in part [] to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i); see United States v. Covey, 232 F.3d 641, 645-46 (8th Cir. 2000); United States v. Esterman, 324 F.3d 565, 569 (7th Cir. 2003). Phythian asserts there was insufficient evidence of any intent to conceal or disguise and the government is attempting to take acts of embezzlement and overextend the conduct to support the money laundering charges.

For proceeds to be laundered, there must first be wrongfully obtained proceeds. See United States v. Shoff, 151 F.3d 889, 891 (8th Cir. 1998). Money laundering "'[p]roceeds' are funds obtained from prior, separate criminal activity." United States v. Savage, 67 F.3d 1435, 1441 (9th Cir. 1995). Here, the prior criminal activity was the embezzlement, which was complete once Phythian deposited health insurance checks into PHCM's Preferred Bank account without the knowledge or authorization of the healthcare providers. The proceeds of these deposited checks were then laundered through separate financial transactions such as writing checks to Goossen

for deposit into Phythian's and Goossen's joint Wells Fargo account, all without Goossen's knowledge. Phythian would then cash checks drawn on the Wells Fargo account at casinos or make ATM cash withdrawals from the Wells Fargo account at casinos. There was sufficient evidence ill-gotten proceeds existed before the money laundering actions.

Where a defendant commingles "illegal proceeds with the identity or the funds of a legitimate and usually preexisting business . . . . [s]uch commingling effectively conceals the nature, source, ownership, and/or control of the unlawful proceeds." Shoff, 151 F.3d at 891 (internal citations omitted). Where the jury heard evidence Phythian deposited the embezzled funds into the PHCM account, then wrote checks to Goossen totaling over $100,000, and next cashed these checks and gambled with the money, all without Goossen's knowledge, there was sufficient evidence for a reasonable jury to convict Phythian of money laundering.

## III. CONCLUSION
We affirm.

_____