NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3817
_____

UNITED STATES OF AMERICA

v.

TIMOTHY LEWIS
a/k/a Blood
a/k/a Born

Timothy Lewis,
Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. No. 3:04-00087-002 (MLC))
Honorable Mary L. Cooper, District Judge

_____

Argued June 23, 2011

BEFORE: HARDIMAN, VANASKIE, and GREENBERG, Circuit Judges

(Filed: July 19, 2011)
_____

Paul J. Fishman
United States Attorney
Mark E. Coyne (argued)
Assistant United States Attorney
Chief, Appeals Division
Ronald Chillemi
Office of the United States Attorney
Securities & Health Care Fraud
970 Broad Street

Newark, NJ 07102-2535

Attorneys for appellee

Richard Coughlin
Federal Public Defender
David E. Schafer
Office of Federal Public Defender
Alison Brill (argued)
Research and Writing Attorney
22 S. Clinton Avenue
Station Plaza #4, 4th Floor
Trenton, NJ 08609

Attorneys for appellant

_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

## I. INTRODUCTION

This matter comes on before this Court on appeal from the District Court's judgment dated September 10, 2010, and entered September 13, 2010, revoking defendant-appellant Timothy Lewis's term of supervised release and sentencing him to a 20-month custodial term without a provision for supervised release to follow the custodial term. We will affirm.

The District Court initially sentenced Lewis on March 31, 2005, to a 57-month custodial term to be followed by three years of supervised release predicated on his plea of guilty to possession of a weapon by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and use of a dangerous weapon to assault a federal officer, in violation of 18

2

U.S.C. § 111(a)(1) and (b).  Lewis was released from prison and began his term of supervised release on March 21, 2008.

On July 2, 2009, the United States Probation Department (Probation) filed the first version of the Petition for Warrant or Summons for Offender Under Supervision (revocation petition) in this case, which alleged that Lewis had committed several Grade C violations of the conditions of supervised release.  That same day the District Court issued a warrant for Lewis's arrest which officers later executed, but on July 9, 2009, he was released on bail.  The Court then "agreed to put off any hearing, or much less sentencing,  . . . so that Defendant could  . . . try harder to comply with his supervision obligations[,]" but ultimately it scheduled a revocation hearing for June 11, 2010.  However, before the hearing was held there was a charge filed against Lewis for simple assault on April 11, 2010, following which, on April 14, 2010,  Probation filed an amended revocation petition taking that charge into account.  Thereafter the Court issued another arrest warrant for Lewis and officers then arrested him on that warrant on April 19, 2010, but he again was released on bail subject to conditions not relevant to this appeal.

On the afternoon of August 2, 2010, two United States Probation Officers (USPOs), Karen Merrigan and Steven Alfrey, drove to Lewis's home in an unmarked, black sport-utility vehicle (SUV) where they observed Lewis driving a black Volvo.  The USPOs followed Lewis for several minutes but eventually they pulled up next to him at a stop light where, after they attracted his attention, they told him to report to the Probation Office the following day.

3

As directed, Lewis reported to the Probation Office at the Trenton, New Jersey, courthouse on August 3, 2010, coming straight from working the night shift at his job. At the office he spoke with USPO Merrigan about pending charges against him, his employment, and the ownership of the Volvo that he had been driving the previous day. Lewis denied owning the Volvo, claiming that it was his daughter's car, but Merrigan pointed out that it was registered in Lewis's name, and that failing to report his ownership of the car on his monthly reports was a potential violation of the conditions of his probation. Lewis became upset and began talking louder, accusing Merrigan of "harassing him since he was released" and stating that he "just want[ed] to take his [pending violation of supervision] case to trial and be done with supervision." Id. at 80. Merrigan advised Lewis to "speak with his attorney about this" and to report on August 9, 2010, with documentation showing that his daughter owned the Volvo. Id. at 81.

On his way out of the courthouse, Lewis passed USPO Alfrey in the hallway who said hello to Lewis. Lewis responded to the greeting by saying "Ya'll better stop following people like that or you're going to have a problem." Id. at 120. When Alfrey asked, "What?", Lewis responded by saying "You heard me." Id. at 122. Probation thereafter filed a second amended revocation petition against Lewis charging him with nine violations, including the violation in issue on this appeal, a Grade A violation for threatening a probation officer in violation of 18 U.S.C. § 1503 (count 7). The other eight counts, all Grade C violations, were as follows: leaving the jurisdiction without permission (count 1); failing to notify Probation within 72 hours of contact with law enforcement (counts 2 and 3); failing to submit a truthful report within the first five days

4

of each month (counts 4 and 9): associating with convicted felons (count 5); committing a federal, state, or local crime (count 6); and failing to truthfully answer all inquiries (count 8). The Court issued a warrant for Lewis's arrest which officers executed at his residence without incident on August 5, 2010.

Lewis appeared before the District Court on August 12, 2010, and pled guilty to the violations contained in counts 1, 2, 3, 4, and 9, but not guilty to counts 5, 6, 7, and 8. Consequently, the Court held a revocation hearing on August 12, 17, 19, 20, and 23, 2010. USPO Alfrey testified at the hearing that when Lewis said "Ya'll better stop following people like that or you're going to have a problem[,]" Lewis's tone was "terse" and "angry," and that Alfrey "felt threatened." Id. at 120-21. Lewis testified that he only said "Ya'll better stop following people like that," and nothing else. Id. at 215-17. Lewis testified that he made that statement because when he recognized that he was being followed by a black SUV, he felt that he might be in danger as he did not realize that the SUV contained USPOs, and when he made that statement he was expressing his concern to USPO Alfrey. Lewis's fears were heightened because at that time there was a gang war on the streets of Trenton; indeed, only a few weeks earlier an individual had been gunned down in Trenton while in his car. Moreover, someone recently had told Lewis's mother to tell Lewis to watch his back. According to Lewis the alleged threat simply was a case of confusion between himself and USPO Alfrey regarding what he said, what he meant, and how USPO Alfrey interpreted his statement.

The District Court, however, credited USPO Alfrey's testimony and discredited Lewis's testimony, noting that Lewis's testimony conflicted in material aspects with what

he had told the investigating United States marshal and his own mother. The Court concluded that "Mr. Lewis did say to Mr. Alfrey exactly what Mr. Alfrey reports and testifies was said and that Mr. Lewis said it in the context of a tone of voice and body language that conveyed to Mr. Alfrey an intent to communicate a threat to Mr. Alfrey, and, indirectly, to his partner, Ms. Merrigan." Id. at 248. The Court therefore found that Lewis had violated 18 U.S.C. § 1503 and found him guilty of a violation of count 7 by a preponderance of the evidence.[1] On August 24, 2010, the Court determined that Lewis's violation of section 1503 in count 7 was a Grade A violation.

The District Court entered its judgment on September 10, 2010, revoking Lewis's supervised release and sentencing him to a 20-month custodial term but without a term of supervised release. Lewis filed a timely notice of appeal on September 14, 2010. His appeal challenges, on statutory interpretation grounds, the Court's determination that Lewis violated 18 U.S.C. § 1503, its formulation of the scienter requirement needed to be shown to establish that there had been a violation of section 1503, and its conclusion that his offense under section 1503 constituted a Grade A violation.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 18 U.S.C. §§ 3231 and 3583(a) and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). A district court must

---

[1] The District Court also found Lewis guilty of count 8 for failing to answer inquiries related to ownership of the Volvo truthfully, but not guilty of count 5, for associating with convicted felons. The Government withdrew count 6. Id. at 223.

find, by a preponderance of the evidence, that the defendant violated a condition of supervised release before it can revoke a defendant's supervised release. 18 U.S.C. § 3583(e)(3). We review a district court's decision to revoke supervised release for an abuse of discretion. United States v. Maloney, 513 F.3d 350, 354 (3d Cir. 2008). We review the factual findings supporting a decision to revoke supervised release for clear error. Id. But we exercise de novo review over questions of law that arise in a decision to revoke supervised release, id., and thus we exercise de novo review over matters of statutory interpretation and the determination of whether a particular crime is a crime of violence as both are questions of law. See Kapral v. United States, 166 F.3d 565, 567 (3d Cir. 1999) (statutory interpretation); United States v. Johnson, 587 F.3d 203, 207 (3d Cir. 2009) (crime of violence).

## III. DISCUSSION

Lewis's primary argument on appeal concerns the application of 18 U.S.C. § 1503, "Influencing or Injuring Officer or Juror Generally," as he contends that for there to be a violation of that section there must be a nexus between the defendant's conduct and a pending judicial proceeding, i.e., the defendant's conduct must be related to a pending judicial proceeding. Section 1503 is somewhat convoluted and includes several distinct clauses, only two of which are potentially pertinent to this appeal. The first clause is the discharge-of-duty clause, which provides that "[w]hoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any . . . officer in or of any court of the United States . . . in the discharge of

7

his duty" is guilty of violating section 1503. 18 U.S.C. § 1503(a). The second clause, which has a broader scope than the first clause, and which is known as the Omnibus Clause, provides that whoever "corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b)." Id.

The Supreme Court, recognizing that the Omnibus Clause "is far more general in scope than the earlier clauses of the statute[,]" adopted the approach taken by other courts that an offense under the Omnibus Clause must have a nexus, i.e., "a relationship in time, causation, or logic with the judicial proceedings." United States v. Aguilar, 515 U.S. 593, 598-99, 115 S. Ct. 2357, 2362 (1995). But neither that Court nor this Court has had occasion to consider whether the discharge-of-duty clause requires that there be a similar nexus or relationship with a judicial proceeding. Here, the District Court did not make explicit which clause of section 1503 it was considering, and the parties disagree on that basic fact.[2] Additionally, Lewis contends that every clause of section 1503 requires as an element of the offense that the offense be related to a pending judicial proceeding. On

---

[2] At oral argument Lewis's attorney contended that the District Court utilized a hybrid approach combining both clauses. On this appeal we need not determine definitively whether we agree with his attorney on this point, but we note that we find the Government's position—that the District Court charged Lewis under the discharge-of-duty clause, and referenced the "administration of justice" not because it was charging Lewis under the Omnibus Clause, but rather in its effort to define the statutory term "corruptly"—to be the more likely explanation. See app. at 234 ("[A]nd fourth, that the Defendant's acts were done corruptly, that is with the purpose of wrongfully impeding the due administration of justice.").

8

the other hand, the Government maintains that the discharge-of-duty clause does not require a nexus with a judicial proceeding, let alone a pending judicial proceeding.[3]

We, however, need not resolve the dispute between the parties regarding the clause of section 1503 under which the petition charged Lewis or whether the discharge-of-duty clause requires that to be a violation of the clause a defendant's conduct must be related to a pending judicial proceeding. We omit making these determinations because even if we assume that every clause in 18 U.S.C. § 1503 provides that a violation of the section include an element that the defendant's conduct be related to a pending judicial proceeding, Lewis still would not be entitled to any relief on this appeal because his conduct clearly was related to a pending judicial proceeding, i.e., a revocation hearing that was to be held in his case.[4]

---

[3] The Government points to an opinion of the United States Court of Appeals for the Eighth Circuit, which, although recognizing that the Omnibus Clause requires a nexus with a judicial proceeding in the form of a relationship in time, causation, or logic, "question[ed] whether § 1503 imposes any requirement that there be a 'pending judicial proceeding.'" United States v. Novak, 217 F.3d 566, 571 (8th Cir. 2000) (emphasis added). See appellee's br. at 21 n.6.

[4] Lewis urges that in the District Court the Government conceded that there was no nexus between his threat to USPO Alfrey and a judicial proceeding when the United States Attorney stated that "[i]t's not our position that there was a pending proceeding." App. at 152. After our review of the record, however, we agree with the Government that the attorney was not conceding that there was not a nexus in this case, but rather was arguing that there was no need for showing the presence of such a nexus under the discharge-of-duty clause of 18 U.S.C. § 1503, a conclusion we reach because the assistant United States attorney continued that "[i]t's our position that . . . he was a Court officer in the furtherance of his duties, which I think is covered. It's kind of a convoluted statute. There's a lot of covenants and clauses . . . ." Id.

9

In taking this approach we do not overlook Lewis's attorney's contention at oral argument that the pending revocation hearing was not a sufficient pending judicial proceeding for section 1503 purposes because it was related to prior revocation petitions that had been superseded. But we reject the distinction between judicial proceedings that the attorney was trying to draw. In this regard we point out that before encountering and threatening USPO Alfrey, Lewis had engaged in an argument with USPO Merrigan that Lewis concluded by stating that "[h]e just wants to take his case to trial and be done with supervision." App. at 80. Clearly, then, Lewis not only was aware of the scheduled revocation hearing, but also had it in mind at the time he threatened USPO Alfrey. Thus, even if we assume that Lewis is correct that section 1503 requires that for the defendant to violate the section his conduct must be related to a pending judicial proceeding, inasmuch as there was such a related judicial proceeding pending, Lewis violated section 1503.

Lewis also challenges the District Court's formulation of the scienter requirement of 18 U.S.C. § 1503. We, however, find no error in that formulation. The District Court explained the scienter requirement of section 1503 as follows:

> [Y]ou knowingly say the words. You do so with . . . intent to influence or intimidate. And to intimidate someone means intentionally to say or do something that would cause a person of ordinary sensibilities to be fearful of harm to himself or another.

App. at 229-30. The Court properly stated that it was required to find that Lewis spoke knowingly and with the specific intent to influence or intimidate USPO Alfrey, and made

10

those findings when it concluded that Lewis spoke with the "intent to communicate a threat to Mr. Alfrey and, indirectly, to his partner, Ms. Merrigan." Id. at 248.

At its core, Lewis's contention, though facially presented as challenging the District Court's discussion of the scienter requirement of section 1503, is aimed at its factual findings and credibility determinations. As Lewis phrases it, "a reasonable listener could not have perceived [what Lewis] said in an angry tone from a probationer to a non-supervising probation officer, as a threat." Appellant's br. at 36-37. But, "[c]redibility determinations are the unique province of a fact finder, be it a jury or a judge sitting without a jury. Where the record supports a credibility determination, it is not for an appellate court to set it aside." United States v. Kole, 164 F.3d 164, 177 (3d Cir. 1998). Here, the record clearly supports the Court's credibility determinations, and so we have no basis to reject its factual findings. Additionally, because "[d]irect evidence of a defendant's mental state frequently is unavailable," a fact-finder "is entitled to scrutinize and make reasonable inferences from defendant's conduct and from all facts surrounding the incident in question." United States v. Peters, 462 F.3d 953, 957 (8th Cir. 2006) (quotation marks and citations omitted). Deference to that entitlement is particularly appropriate when the fact-finder is determining an individual's intent in cases such as this one that come within the category of those where "[i]ntent . . . cannot be proven except by circumstantial evidence; [and] the determination [of intent] . . . depends on the credibility of witnesses, as assessed by the factfinder." United States v. Phythian, 529 F.3d 807, 812 (8th Cir. 2008) (final alteration in original) (quotation marks and citation omitted). There was clearly sufficient evidence in the record for the Court to

11

conclude that Lewis, however foolishly, spoke with the specific intent to intimidate or influence USPO Alfrey, and so the Court did not err in making its findings.

Lewis's final challenge is to the District Court's determination that his offense under section 1503 was a "crime of violence." He argues that his offense was not a "crime of violence" and therefore the Court reached its conclusion that his offense was a Grade A violation in error. Lewis maintains that his offense actually was a Grade B violation and thus was less aggravated than a Grade A violation. The grade classification of Lewis's offense has the potential to be significant because all of Lewis's other charges were Grade C violations, and "[w]here there is more than one violation of the conditions of supervision, . . . the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b). Of course, if Lewis's section 1503 offense was a Grade B violation instead of a Grade A violation, his advisory sentencing range under the sentencing guidelines would be lessened.

The sentencing guidelines define a "crime of violence" as including a state or federal offense punishable by a term of imprisonment exceeding one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another . . . ." U.S.S.G. § 4B1.2(a)(1). Lewis argues that the District Court erred "by going outside the four corners of the charging document and importing language to make the charges and statute appear to be a crime of violence." Appellant's br. at 42. Lewis largely predicates his argument on the Supreme Court's decisions in <u>Taylor v. United States</u>, 495 U.S. 575, 110 S. Ct. 2143 (1990), and <u>Shepard v. United States</u>, 544 U.S. 13, 125 S. Ct. 1254 (2005), but those cases are not controlling here because in them, unlike in

12

this case, courts were tasked with determining the exact contours of a <u>prior</u> conviction. Here, however, the District Court conducted a bench trial and afterwards considered the evidence that it had heard in determining that Lewis's offense was a "crime of violence." We are satisfied that the Court correctly considered both the provisions of the guidelines and the facts as it found them to be following its receipt of the evidence at the bench trial in determining whether Lewis's section 1503 offense was a "crime of violence."[5] Furthermore, we are satisfied that there was sufficient evidence for the Court to conclude that Lewis's offense under 18 U.S.C. § 1503 was a "crime of violence" because it "ha[d] as an element the . . . threatened use of physical force against the person of another . . . ." U.S.S.G. § 4B1.2(a)(1).

## IV. CONCLUSION

For all of the foregoing reasons we will affirm the judgment entered and sentence imposed by the District Court on September 10, 2010.

---

[5] Indeed, even if the Supreme Court's approach in <u>Taylor</u> and <u>Shepard</u> was applicable here, the District Court would not have erred in reaching its conclusion, as those cases did not "purport to limit adequate judicial record evidence strictly to charges and instructions, since a conviction might follow trial to a judge alone" and in a bench trial "the closest analogs of jury instructions would be a bench-trial judge's formal rulings of law and findings of fact[.]" <u>Shepard</u>, 544 U.S. at 20, 125 S. Ct. at 1259.