NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1672
_____

UNITED STATES OF AMERICA

v.

VALERIE MANZELLA,

                                        Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 2-05-cr-00289-001)
Honorable Nora B. Fischer, District Judge
_____

Submitted under Third Circuit LAR 34.1(a)
June 24, 2011

BEFORE:  HARDIMAN, VANASKIE, and GREENBERG, Circuit Judges

(Filed: August 29, 2011)
_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.


I. INTRODUCTION

This matter comes on before this Court on defendant Valerie Manzella's appeal

from the District Court's judgment dated March 3, 2011, revoking her term of supervised

release and sentencing her to a 12-month and one day custodial term, but without provision for supervised release to follow the custodial term. We will affirm.

Manzella initially pled guilty to one count of "Uttering a Counterfeit Security of an Organization Involved in Interstate Commerce" in violation of 18 U.S.C. § 1513(a). The District Court sentenced her to 30 months imprisonment for this offense, a term well in excess of the advisory sentencing guidelines range of 2-8 months, to be followed by a three-year term of supervised release. The Court imposed this long sentence because it believed that the sentence was necessary for Manzella to be eligible for a 500-hour drug treatment program that the Bureau of Prisons (BOP) offered. Manzella nevertheless appealed and her appeal was successful as we vacated her sentence and remanded the case to the District Court for resentencing. See United States v. Manzella, 475 F.3d 152 (3d Cir. 2007). On remand, Manzella requested that the District Court delay resentencing her pending completion of the drug treatment program. The Court accommodated her request and, after Manzella completed the program, it sentenced her to time served, which equated to approximately 13 months imprisonment. On the resentencing, however, it imposed the other conditions of her initial sentence, including the three-year term of supervised release. Manzella did not appeal from the new sentence.

Shortly before the expiration of Manzella's three-year term of supervised release the United States Probation Department (Probation) filed a Petition on Supervised Release (revocation petition) alleging that Manzella had committed the following acts that were violations of the conditions of her supervised release:

2

On January 31, 2010, Ms. Manzella was arrested on charges of Theft By Unlawful Taking, Receiving Stolen Property, and Access Device Fraud. The charges were all held for Court at the preliminary hearing.

. . .

On March 28, 2010, Ms. Manzella was charged with Prohibited Acts - Use/Possession of Drug Paraphernalia. On May 20, 2010, this charge was withdrawn and she entered a guilty plea for Disorderly Conduct. According to the criminal complaint, Ms. Manzella was in possession of two crack pipes and a spoon with white residue.

. . .

Ms. Manzella failed to report to the office for scheduled office visits on April 13, 2010 and May 14, 2010.

. . .

Ms. Manzella failed to report for scheduled drug testing on May 7, 2010, and July 12, 2010. Furthermore, Ms. Manzella tested positive for cocaine on July 14, 2010.

. . .

Ms. Manzella failed to notify the Probation Officer, as required, within 72 hours of being arrested or questioned by a law enforcement officer on more than one occasion. Ms. Manzella was arrested on January 31, 2010, and March 28, 2010, but did not report this law enforcement contact to the Probation Officer until confronted by the Probation Officer on later dates.

Ms. Manzella was cited with a summary traffic violation on May 30, 2010, was questioned over the phone by a law enforcement officer on May 30, 2010 regarding a Burglary investigation, and had contact with a law enforcement officer on June 7, 2010, at the police station relative to the aforementioned burglary investigation and failed to report any contact with law enforcement to the Probation Officer as

3

required until confronted by the Probation Officer on later dates.

App. at 46-47. Five days later, Probation filed a Supplemental Petition on supervised

Release alleging that:

> On July 27, 2010, Ms. Manzella reported to the U.S. Probation Office to submit a drug test. During the drug testing process, a U.S. Probation Officer noticed that the defendant was attempting to circumvent urine testing procedures. The apparatus was confiscated and is currently in the Possession of the U.S. Probation Office.
>
> Ms. Manzella subsequently admitted to using Cocaine a few days prior to the aforementioned testing date.

App. at 49.[1]

On the proceedings on Probation's petition Manzella admitted the charges of all of

the violations of supervised release alleged in the revocation petition except for the

charge that she committed a Pennsylvania state offense when she was arrested on January

31, 2010, and charged with theft by unlawful taking, receiving stolen property, and

access device fraud. Prior to the revocation hearing, it was established that Manzella's

violations of supervised release relating to drug possession, use, and testing, had

stemmed from an incident in which Manzella was the victim of a violent sexual assault

and suffered injuries including a fractured clavicle. Following the sexual assault,

Manzella began to suffer from symptoms of post-traumatic stress disorder (PTSD) and

---

[1] Manzella apparently was arrested for burglary on August 24, 2010, but that arrest was after her period of supervised release had ended, and so it is not relevant to this appeal. According to testimony at the revocation hearing, she pled guilty to a lesser charge of criminal trespass and was sentenced to a nine-month term of probation.

4

was subject to pressure from people in her neighborhood to drop the criminal charges against her attacker. Understandably, but nevertheless not justifiably, these circumstances led to her drug relapse. After her attacker pleaded guilty, Manzella was diagnosed with PTSD and received additional treatment for her drug addiction. She completed a 28-day inpatient drug treatment program, began intensive outpatient therapy, started seeing a therapist twice a week, and initiated a practice of attending Narcotics Anonymous meetings on an almost-daily basis. Since that time, Manzella has not tested positive for drugs,[2] and she received a job offer shortly before her revocation hearing.

At Manzella's revocation hearing the Government introduced into evidence, without objection, police reports detailing the case against her which had resulted in the state charges of theft by unlawful taking, receiving stolen property, and access device fraud. The police reports noted that an individual had called police to report that one of his debit cards was missing after he had been with Manzella and that when the individual contacted his bank he learned that his card had been used to make more than $400 of purchases. The individual subsequently presented a detective with his bank statements showing that his card had been used for transactions within an hour of each other at two Giant Eagle stores. The detective notified the head of loss prevention at Giant Eagle's corporate office and Giant Eagle provided him with a surveillance tape of the registers for each purchase which showed several video angles of the same female leaving the store in

---

[2] Manzella volunteered to continue drug tests during the period after her term of supervised release expired, but before her revocation hearing took place. During that time she took 17 tests, all of which came back negative, although five of those tests were deemed invalid because of high creatinine levels.

all of the videos. The detective showed the victim pictures of the female and he identified her as Manzella, an identification which led to Manzella's arrest.

At the revocation hearing on Probation's petition Manzella introduced into evidence a February 11, 2011 Allegheny County Court of Common Pleas Rule 586 Order of Court dismissing the state charges involving her use of the debit card in exchange for Manzella agreeing to pay restitution in the amount of $304.82 to the victim. There was additional evidence at the hearing of Manzella's wrongful use of the debit card as Probation Officer Tara Kessler testified that Manzella admitted "the victim had given her permission to charge a certain amount on the card but that she spent more than what he had said and that's why he filed the charges[,]" and that the amount of restitution that Manzella agreed to repay to the victim was over $300. App. at 135-36.

After the close of evidence, at the point at which the District Court was stating its findings of fact and preparing to pronounce its judgment, Manzella objected to its consideration of the police reports. The Court nevertheless found that Manzella had committed a crime under Pennsylvania law, and, in noting Manzella's late objection, stated that "there's corroborating evidence . . . that leads me to believe that there's a sufficient basis here under the preponderance of the evidence standard and given the rules that are applicable to a revocation proceeding, that the Court's ruling stands." App. at 223. The Court determined that Manzella had committed a Grade B violation of supervised release, which subjected her to an advisory sentencing range of 12 to 18 months imprisonment. On March 3, 2011, the Court entered its judgment revoking

Manzella's supervised release and sentencing her to a custodial term of 12 months and one day.

Manzella filed a timely notice of appeal and an unopposed motion for expedition of the appeal which we granted on March 15, 2011. Manzella challenges both the District Court's judgment and her sentence in this appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 18 U.S.C. §§ 3231 and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). A district court must find, by a preponderance of the evidence, that the defendant violated a condition of supervised release before it can revoke a defendant's supervised release. 18 U.S.C. § 3583(e)(3). We review a district court's decision to revoke supervised release for an abuse of discretion. United States v. Maloney, 513 F.3d 350, 354 (3d Cir. 2008). We review a district court's factual findings supporting a decision to revoke supervised release for clear error and exercise de novo review over questions of law that arise in a decision to revoke supervised release. Id. We review the procedural and substantive reasonableness of a district court's sentence for supervised release violations for an abuse of discretion. United States v. Young, 634 F.3d 233, 237 (3d. Cir 2011).

## III. DISCUSSION

Manzella's primary argument on appeal is that the District Court erred in considering police reports regarding her alleged theft during the revocation hearing, as

7

she contends that those reports contained inadmissible hearsay and the Court violated her right to confront and cross-examine adverse witnesses by relying on the reports. There is, however, an obvious problem with the argument because when the District Court asked Manzella's attorney whether she had objected to the admission of the police reports into evidence, she responded "No Objection[.]" App. at 135. Moreover, on at least two occasions in the revocation proceedings after the admission of the reports when Manzella's attorney had an opportunity to object to the use of the reports she did not do so. See app. at 183, 206. Thus, although Manzella could have objected to the reports earlier she did not object to them until after the District Court already had set forth factual findings and was preparing to pronounce its judgment. Furthermore, even then she objected only on hearsay grounds. See app. at 217. Therefore, though Manzella argues on appeal that she was denied her right to confront and cross-examine adverse witnesses, she did not assert in the District Court that she had any such right until the Court had rendered its judgment. See app. at 222.

Because Manzella's objection to the use of the police reports was untimely, we will review her claims challenging the consideration of those reports under the plain error standard. Consequently, we have the discretion to reverse the District Court's judgment only if the admission of the reports affected her "substantial rights." See Fed. R. Crim. P. 52(b). To constitute plain error, there must have been an obvious legal error, and, in the circumstances of this case, Manzella has the burden of persuasion that the error was prejudicial; that is, that the error affected the outcome of the proceedings. See United States v. Olano, 507 U.S. 725, 732-35, 113 S.Ct. 1770, 1777-78 (1993). The Supreme

8

Court has "explained that the discretion conferred by Rule 52(b) should be employed in those circumstances in which a miscarriage of justice would otherwise result." Id. at 736, 113 S.Ct. at 1779 (citations and internal quotation marks omitted).

It is axiomatic that "a defendant charged with violating a release condition, unlike a defendant charged with violating a statute, does not enjoy 'the full panoply of rights' normally available in a criminal proceeding." United States v. Loy, 237 F.3d 251, 260 (3d Cir. 2001). Thus, in revocation hearings the defendant does not have a right to trial by jury and the government must prove the charge of violation of supervised release only by a preponderance of the evidence rather than by satisfying a more exacting standard. The Supreme Court has explained that revocation hearings "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604 (1972). And, while defendants in revocation hearings have a general right to question adverse witnesses, that right is not absolute, as it does not apply if "the court determines that the interest of justice does not require the witness to appear[.]" Fed. R. Crim. P. 32.1(b)(2)(C). In determining whether the interest of justice requires a witness to appear, we have held "that a district court 'should apply a balancing test [in revocation hearings] when considering the releasee's asserted right to cross-examine adverse witnesses,' and that '[t]he court is to balance the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it.'" United States v. Lloyd, 566 F.3d 341, 344-45 (3d Cir. 2009) (quoting Fed. R. Crim. P. 32.1(b)(2)(C) advisory committee's note).

Here, as we previously discussed, Manzella did not object to the police reports until after the close of evidence when the District Court was preparing to pronounce its judgment, at which point Manzella objected on hearsay grounds. And, it was not until after the Court concluded "that the facts are sufficient under a preponderance of evidence standpoint to have me make the determination [that] there was a commission of a . . . state crime in this case[,]" app. at 221, that Manzella made any objection to the police reports on confrontation grounds. The late objections prevented the Court from conducting a balancing test with respect to witnesses appearing, and determining, at a point in the revocation hearing when it was still possible to call potential witnesses who could have testified to the information in the reports, whether "the interest of justice . . . required the witness to appear[.]" Fed. R. Crim. P. 32.1(b)(2)(C).

We do not know why Manzella delayed making her objection to the reports but, regardless of the reason for her delay, we do not view the District Court's consideration of the reports as having affected her substantial rights. Rather, when we consider all of the evidence we conclude that Manzella has not met her burden of establishing that even if there was an error in the District Court proceedings the error was prejudicial to the extent that it affected the outcome of the District Court proceedings. In this regard, we observe that the evidence at the revocation hearing included, besides the police reports, which were supported by video evidence obtained from the Giant Eagle stores, direct testimony, which the District Court found credible and that Manzella did not dispute or rebut, that Manzella admitted that "the victim had given her permission to charge a certain amount on the card but that she spent more than what he had said and that's why

10

he filed the charges[,]" and that the amount of restitution that Manzella agreed to repay to the victim was over $300. App. at 135-36. Thus, even if we ignore the police reports, there was a preponderance of evidence establishing that Manzella committed a state offense as charged in the revocation petition. Accordingly, there was not a "miscarriage of justice" in the District Court proceedings in this case calling for us to exercise our discretion under Federal Rule of Criminal Procedure 52(b) to reverse the Court's judgment. See Olano, 507 U.S. at 736, 113 S.Ct. at 1779.

Manzella also argues that the District Court erred, "by relying on a Pennsylvania Rule 586 order of court dismissing state criminal charges as evidence of guilt of the underlying charges." Appellant's br. at 44. She relies primarily for this contention on our decision in United States v. Poellnitz, 372 F.3d 562, 570 (3d Cir. 2004), in which we held that the district court's consideration of a defendant's nolo contendere plea to a state crime "as evidence of [the defendant's] commission of the underlying crime was improper." On remanding that case to the district court, we directed that, applying the preponderance of evidence standard, "the District Court should take into account all evidence in the record, including, but not limited to, evidence presented at [the defendant's] plea hearing", and clarified that "[w]hat the District Court may not do . . . is treat the nolo plea as an admission by [the defendant] that he committed the crime." Id. Here, we disagree with Manzella's assertion that the District Court considered her dismissal of the state charges under Pennsylvania Rule of Criminal Procedure 586 as evidence of her guilt of those charges. Rather, the Court followed our directions in Poellnitz to consider the Rule 586 dismissal in the context of the entirety of the evidence.

11

In fact, the Court specifically discussed the import of our decision in Poellnitz, properly applied it to the facts of this case, and concluded that the evidence was sufficient to find that Manzella had committed a state crime. We therefore find no error with respect to this issue.

Manzella's penultimate claim is that even considering the police reports and Rule 586 dismissal, the evidence was not sufficient to establish that she committed a state crime by preponderance of the evidence. She also argues that even if there was sufficient evidence to establish that she committed a state crime, that crime was not punishable by a term of imprisonment exceeding one year, and, therefore, did not constitute a Grade B violation of supervised release. See U.S.S.G. § 7B1.1(a)(2) (codifying that conduct "constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year" is a Grade B violation).

Manzella claims that there was insufficient evidence for the District Court to conclude that she had the requisite intent to commit any of the three state offenses with which she was charged—theft by unlawful taking, receiving stolen property, and access device fraud—by a preponderance of the evidence. We disagree with that assertion. Testimony at the revocation hearing established that Manzella admitted that she had used the victim's debit card at the Giant Eagle stores, charged more than she had been authorized to spend, and agreed to pay restitution to the victim in excess of $300. That uncontradicted evidence was sufficient for the Court to conclude by a preponderance of the evidence that Manzella had the requisite intent to deprive the victim of his property and knowledge that the property was stolen.

12

Manzella's arguments that the government did not offer any direct proof that the overcharge was not accidental or that she did not intend to repay the victim for the overcharge are unavailing. Because "[d]irect evidence of a defendant's mental state frequently is unavailable," a fact-finder "is entitled to scrutinize and make reasonable inferences from defendant's conduct and from all facts surrounding the incident in question." United States v. Peters, 462 F.3d 953, 957 (8th Cir. 2006) (quotation marks and citations omitted). That is particularly true when the question is one of an individual's intent, as "[i]ntent frequently cannot be proven except by circumstantial evidence; the determination [of intent] often depends on the credibility of witnesses, as assessed by the factfinder." United States v. Phythian, 529 F.3d 807, 812 (8th Cir. 2008) (alteration in original) (quotation marks and citation omitted). We are satisfied that the District Court properly considered the entirety of the evidence, and that sufficient evidence in the record supported its factual findings and legal conclusions. If Manzella wished to demonstrate that her overcharge was accidental or that she intended from the outset to reimburse the victim, she should have presented some evidence supporting those assertions to the District Court instead of relying on mere suggestions to that effect which she does not support by any evidence to which she cites in her appellate brief.

Likewise, the evidence was sufficient to establish that she committed a Grade B violation of supervised release. Conduct constituting a state offense punishable by more than one year in prison is a grade B violation. See U.S.S.G. § 7B1.1(a)(2). Under Pennsylvania law, second degree misdemeanors and higher are punishable by a term of imprisonment exceeding one year. See 18 Pa. Cons. Stat. Ann. § 106(b)(7) and (8) (West

13

1998).  Theft by unlawful taking and receiving stolen property are second-degree misdemeanors if the value involved is greater than $50, but less than $200, and first-degree misdemeanors if the value involved is greater than $200.  See id. § 3903(b).  Access device fraud is a second-degree misdemeanor even if the value involved is less than $50.  See 18 Pa. Cons. Stat. Ann. §4106(c)(1)(iii) (West Supp. 2006).  Testimony established that Manzella agreed to reimburse the victim over $300, and Manzella did not offer any evidence on her own behalf to suggest that the $300 figure was incorrect or otherwise contradict that testimony.  It was therefore reasonable for the District Court to rely on that amount in determining that the state offenses constituted a Grade B violation.

Manzella's final claim that her sentence is procedurally and substantively unreasonable is without merit, as, despite her protestations to the contrary, the District Court gave meaningful consideration to the appropriate factors under 18 U.S.C. § 3553(a), and Manzella has not met her burden of establishing that her 12-month and one-day sentence, which was at the low end of the guideline range of 12 to 18 months, was unreasonable.  Overall, we are satisfied that the Court did not abuse its discretion in imposing Manzella's sentence.

Lastly, we note that Manzella's arguments on appeal minimize the fact that she was charged not only with committing a state offense in the revocation petition, but that she was also charged with and admitted to offenses related to drug use.[3]  Those drug-

---

[3] Although we question whether it was advisable to bring those drug-related charges in the revocation petition given that Manzella voluntarily extended her initial term of imprisonment in order to complete the BOP's 500-hour drug treatment program, and the reason for her relapse was that she was the victim of a sexual assault, after which she

14

related offenses subjected her to mandatory revocation of supervised release, <u>see</u> 18 U.S.C. § 3583(g), and constituted Grade B violations because they were punishable by a term of imprisonment exceeding one year due to her having a prior drug conviction.  <u>See</u> <u>United States v. Cates</u>, 613 F.3d 856, 857 (8th Cir. 2010); <u>see</u> also 21 U.S.C. § 844(a); <u>United States v. Bungar</u>, 478 F.3d 540, 544 (3d Cir. 2007).  Accordingly, even if we rejected the District Court's ruling that Manzella committed a state offense constituting a Grade B violation, that rejection would not undermine the final judgment entered or sentence imposed by the District Court because the drug offenses, to which Manzella admitted, mandated revocation of her supervised release and were, themselves, Grade B violations.

received additional drug treatment and remained sober once her attacker pleaded guilty, we recognize that the decision to bring these charges is not subject to our review.

15