# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3712
_____

United States of America

*Plaintiff - Appellee*

v.

Bradley Jon Matheny

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: June 17, 2022
Filed: July 28, 2022
_____

Before GRUENDER, BENTON, and GRASZ, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Bradley Matheny was convicted on seven counts of forging or counterfeiting postage meter stamps in violation of 18 U.S.C. § 501 and three counts of smuggling in violation of 18 U.S.C. § 554. The district court sentenced Matheny to 36 months' imprisonment and ordered him to pay $256,441.78 in restitution to the United States Postal Service ("USPS"). Matheny appeals, challenging the sufficiency of the evidence supporting his convictions, the district court's estimate of the face value of the counterfeit stamps for purposes of calculating his advisory sentencing guidelines

range, the amount of restitution ordered, and the substantive reasonableness of his prison sentence. We vacate and remand on the restitution issue but otherwise affirm Matheny's convictions and sentence.

## I.

Matheny operated an online business buying and reselling items on eBay. He used the USPS to ship items to customers. Through eBay's web site, Matheny would input his package specifications, prepay postage, and receive a digital shipping label that he would print on adhesive paper. The top of the label indicated whether he had paid for first-class or priority shipping; the bottom of the label included a barcode and tracking number.

During the summer of 2015, a Cedar Rapids post-office manager noticed that Matheny was regularly dropping off packages at the back dock after 8:00 p.m., which was the "critical entry time" when the office staff "need[ed] to get the packages in so that [they could] process them properly for their next location." The manager asked Matheny "if he could possibly bring his mail in earlier," noting that the office was "doing him a courtesy by letting him come to the back dock" in the first place. Matheny replied, "Well, I can't do that. Do I have to take my business somewhere else?" The manager relented and assured Matheny that the office "appreciate[d his] business."

After that conversation, Matheny began dropping off his packages progressively later, "until routinely he was coming in about a quarter to 9:00." As a result, the staff "didn't have . . . time to scrutinize the packages." They would simply sort the packages for priority or first-class delivery according to the designation of shipping class at the top of the label.

In the fall of 2015, a mail handler approached the manager with "some parcels that she said didn't look right"—"the postage didn't seem to match up with the service they were getting." After investigating the packages himself, the manager referred the matter to Inspector Ron Jewell of the Postal Inspection Service.

Inspector Jewell intercepted and examined every piece of mail that Matheny sent over a one-month period and discovered several irregularities. Some packages had been "underweighted"; that is, the recorded weight on the label, which determined the postage fee, was less than the actual weight of the package. Other packages exhibited recorded weights that been altered. In some cases, a package had both been underweighted and had its recorded weight altered. For example, one 13.1-ounce package featured a recorded weight of 3 ounces that had been modified to 8 ounces, with a red "DO NOT BEND" stamp partially obscuring the alteration. Still other packages featured labels with a priority shipping designation on the top half but a first-class barcode and tracking number on the bottom half. Subpoenaed eBay records indicated that Matheny routinely purchased two shipping labels for a single order, one priority and the other first class, and then voided the more expensive priority purchase for which he received a full refund.

In May 2017, postal inspectors executing a search warrant at Matheny's residence discovered a box full of clippings of first-class labels without barcodes and tracking numbers. At that point, Inspector Jewell realized that Matheny had been covering the bottom halves of priority labels with the bottom halves of first-class labels, thereby producing a hybrid label with a priority shipping designation at the top and a first-class barcode and tracking number at the bottom. The priority shipping designation would ensure priority delivery times, and the first-class barcode and tracking number would ensure that the package was scanned and tracked to its destination. Meanwhile, the covered priority barcode would not be scanned, enabling Matheny to collect a refund on the priority stamp that he had purchased but apparently never used. The result would be faster priority delivery times at less expensive first-class rates.

To confirm his theory, Inspector Jewell zoomed in on the photographs that he had taken of the hybrid labels. Sure enough, he "could see a little crease line across the top of the barcode" indicating that "First-Class barcodes had been laid over the actual Priority barcode." Inspector Jewell was able to match each of the first-class label clippings discovered at Matheny's residence with a first-class barcode and tracking number that Matheny had used with a priority shipping designation.

Meanwhile, law enforcement also noticed irregularities in Matheny's international sales. Matheny had opted not to use eBay's Global Shipping Program so that he could purchase international shipping labels and complete customs forms on his own. For several of his international sales, Matheny reduced customs taxes by underrepresenting the value of the item sold and designating it as a "gift," rather than "merchandise," on the customs form.

Postal inspectors eventually confronted Matheny, and he confessed to altering the recorded weights on some labels. Later, a grand jury charged Matheny with eight counts of forging or counterfeiting postage meter stamps in violation of 18 U.S.C § 501, three counts of smuggling in violation of 18 U.S.C. § 554, and four additional counts not at issue in this appeal. Matheny pleaded not guilty and waived his right to trial by jury. At the close of the bench trial, Matheny moved for a judgment of acquittal. The district court denied the motion and found Matheny guilty on seven counts of forging or counterfeiting postage meter stamps and three counts of smuggling. The district court acquitted Matheny on the remaining counts.

At sentencing, the district court found that the face value of the counterfeit stamps exceeded $250,000, triggering a twelve-level enhancement to Matheny's base offense level. *See* U.S.S.G. §§ 2B1.1(b)(1)(G), 2B5.1(b)(1). The advisory sentencing guidelines range after application of the enhancement was 51 to 63 months' imprisonment. The district court varied downward to a sentence of 36 months' imprisonment. It also ordered Matheny to pay $256,441.78 in restitution to the USPS. This sum included the loss due to Matheny's splicing and alteration of shipping labels as well as the loss due to Matheny's underweighting of packages.

Matheny appeals, challenging the sufficiency of the evidence supporting his convictions, the district court's face-value calculation, the amount of restitution ordered, and the substantive reasonableness of his prison sentence.

## II.

We begin with Matheny's challenge to the sufficiency of the evidence supporting his convictions. A defendant may request either a new trial or a judgment of acquittal due to insufficient evidence, and the two requests are governed by different standards. *See, e.g.*, *United States v. Ruzicka*, 988 F.3d 997, 1007 (8th Cir. 2021). Matheny does not specify which remedy he seeks on appeal. But given that he did not request a new trial before the district court and his appellate brief recites the standards governing our review of the denial of a motion for a judgment of acquittal, we construe his sufficiency-of-the-evidence challenge as a request for a judgment of acquittal. As we explain below, construing the challenge as a request for a new trial would not alter our conclusion.

We review the denial of a motion for a judgment of acquittal due to insufficient evidence *de novo*. *Id.* A defendant is entitled to a judgment of acquittal due to insufficient evidence only if no reasonable factfinder could find him guilty beyond a reasonable doubt. *See id.*

Seven of Matheny's convictions were based on 18 U.S.C. § 501, which criminalizes "mak[ing] . . . or knowingly us[ing]" any "forged or counterfeited . . . postage meter stamp." On two of the seven counts, the Government claimed that Matheny violated § 501 by making or knowingly using a shipping label with an altered recorded weight. *Cf.* 18 U.S.C. § 513(c)(2) (defining "forged" documents in a related context to include any document "that purports to be genuine but is not because it has been falsely altered"). On the other five, the Government claimed that Matheny violated § 501 by making or knowingly using a hybrid shipping label featuring a priority shipping designation but a first-class barcode and tracking number. *Cf. id.* (defining "forged" documents to include to any document "that purports to be genuine but is not because it . . . is a combination of parts of two or more genuine documents"). Matheny presents two arguments as to why the evidence was insufficient to support some or all of his § 501 convictions.

First, as to all seven counts, Matheny argues that there was insufficient evidence that he committed the conduct alleged. We disagree. The evidence indicated that the labels' recorded weights had been altered on the packages at issue in two of the counts and that hybrid labels had been used on the packages at issue in the remaining five counts. Matheny speculates that someone else might have made the forgeries. But Matheny confessed to altering recorded weights on shipping labels. And even assuming that someone else made the hybrid labels, the fact that Matheny routinely bought two labels and then voided the priority purchase in order to receive a refund indicates that he knew that the hybrid labels he was using were forgeries that looked like priority labels but would scan as first-class labels. *See* § 501 (criminalizing "mak[ing] . . . *or knowingly us[ing]*" forged postage meter stamps (emphasis added)); *cf. United States v. Olbres*, 61 F.3d 967, 973 (1st Cir. 1995) (holding that a reasonable jury could infer that the defendants knowingly understated their income from the fact that they took advantage of related deductions). So does the fact that Matheny insisted on dropping off his packages at the back dock late at night when the post-office staff would be unable to scrutinize the labels. *Cf. United States v. Pizano*, 421 F.3d 707, 723 (8th Cir. 2005) (holding that "the jury could infer that [the defendant] knew" that certain funds "were criminally derived" in part because the defendant attempted to conceal the funds' source).

Second, as to the five counts involving the hybrid labels, Matheny argues that the conduct alleged does not violate § 501. Matheny reasons that covering the bottom half of a priority label with the bottom half of a first-class label while leaving the top half of the priority label intact does not result in a "forged or counterfeited . . . postage meter stamp," § 501, because the "stamp" consists of only the top half of the label with the designations of postage and shipping class. Therefore, Matheny concludes, proof that he made or knowingly used the hybrid labels does not constitute proof that he violated § 501.

We are not persuaded. The dictionary defines a "postage stamp" as "a government adhesive stamp or imprinted stamp for use on mail as evidence of prepayment of postage." *Merriam-Webster's Collegiate Dictionary* 969 (11th ed.

2005). The scannable barcodes on the bottom halves of the shipping labels Matheny purchased were part of what made the labels "evidence of prepayment of postage." *See id.* Therefore, the barcodes were part of the stamps. Furthermore, an adhesive "stamp" is "a . . . printed paper," *id.* at 1215, not a subsection of a printed paper. Thus, if (as Matheny concedes) the designations of postage and shipping class at the top of the labels were part of the stamps, then everything else on the labels— including the barcodes and tracking numbers—were part of the stamps, too. Just as a dollar bill consists of not only the designation of the bill's denomination but the entire sheet of paper on which that designation appears, so an adhesive postage stamp consists of not only the designations of postage and shipping class but the entire label on which those designations appear.

This does not mean that any alteration, no matter how minute or immaterial, of any part of a shipping label violates § 501. Someone who tapes on a replacement for the corner that was torn off his diploma might be open to the charge of fastidiousness, but he could hardly be accused of forgery. The reason is that the corner of a diploma is immaterial to the diploma's function of providing evidence that its owner has earned a certain degree from a certain school. *Cf. United States v. Morse*, 983 F.2d 851, 853 (8th Cir. 1993) (describing forgery as "fraudulent activity"); "Fraud," *Black's Law Dictionary* (11th ed. 2019) (defining fraud to require "misrepresentation or knowing concealment of a *material* fact" (emphasis added)). By the same logic, someone who splices a new corner onto a stamp might not be guilty of forgery given that, typically, the corner of a stamp is immaterial to the stamp's function of providing "evidence of prepayment of postage." *See* "Postage stamp," *Merriam-Webster's Collegiate Dictionary* 969 (11th ed. 2005).

But Matheny did much more than simply give his shipping labels new corners. Instead, his conduct is analogous to covering the school name and logo on a diploma with the name and logo of a more prestigious school. Unlike splicing on a new corner, splicing on the name and logo of a more prestigious school constitutes forgery because it creates the false appearance that the diploma's owner received a degree from the more prestigious school. So too here, Matheny committed forgery when he spliced together priority shipping designations with first-class barcodes and

-7-

tracking numbers because he thereby created the false appearance that he was paying priority postage. *Cf.* § 513(c)(2) (providing that a document "that purports to be genuine but is not because it . . . is a combination of parts of two or more genuine documents" is forged).

Matheny also challenges the sufficiency of the evidence supporting his smuggling convictions. As relevant here, 18 U.S.C. § 554 criminalizes "fraudulently or knowingly export[ing] or send[ing] from the United States . . . any merchandise, article, or object contrary to any law or regulation of the United States." Federal regulations require designating the "[c]ategory of items" being shipped "(e.g., document, gift, merchandise, etc.)" on all customs forms. *See* U.S. Postal Serv., International Mail Manual § 123.711 (2022); 39 C.F.R. § 20.1 (incorporating by reference the International Mail Manual). According to Matheny, the evidence was insufficient to prove that he knew he had mislabeled merchandise as gifts. But trial testimony indicated that the default setting on the online customs form was "merchandise," which means that Matheny must have deliberately changed it to "gift." From this, a reasonable factfinder could infer beyond a reasonable doubt that Matheny knew that he had mislabeled merchandise he was selling on eBay as gifts. *Cf. United States v. Bowman*, 235 F.3d 1113, 1115-16 (8th Cir. 2000) (holding that a reasonable jury could infer that the defendant knew he was concealing the proceeds of a crime based on evidence that he "was deliberately moving the proceeds around" in a way that "ma[de] tracking the money difficult").

Thus, Matheny's sufficiency-of-the-evidence challenge fails as to all counts if it is construed as a request for a judgment of acquittal. And it fares no better if construed as a request for a new trial. To prevail on this claim, even assuming he did not forfeit it, Matheny would need to show that "the evidence weigh[ed] heavily" against the verdict. *See United States v. Huerta-Orozco*, 272 F.3d 561, 565 (8th Cir. 2001). For the reasons explained above, the evidence did not weigh heavily against the verdict but rather provided ample support for it. Therefore, Matheny's sufficiency-of-the-evidence challenge fails regardless of whether it is construed as a request for a judgment of acquittal or a request for a new trial.

**III.**

Next, Matheny objects to the face-value calculation underlying the district court's application of the twelve-level sentencing enhancement to his base offense level.[1]  *See* U.S.S.G. §§ 2B1.1(b)(1)(G), 2B5.1(b)(1).  We review the district court's legal conclusions *de novo* and its factual findings for clear error, *see United States v. Lamere*, 980 F.2d 506, 510 (8th Cir. 1992), keeping in mind that the district court need only make a "reasonable estimate" of the counterfeits' face value, *see Ruzicka*, 988 F.3d at 1011 (stating this principle when reviewing a loss calculation); *United States v. Taftsiou*, 144 F.3d 287, 293 (3d Cir. 1998) (invoking the same principle when reviewing a face-value calculation); *United States v. Melton*, 131 F.3d 1400, 1403, 1406 (10th Cir. 1997) (same).

When a defendant is convicted under § 501, § 2B5.1(b)(1) directs the sentencing court to enhance the defendant's base offense level according to the table in § 2B1.1 but to use "the face value of the counterfeit items" rather than the loss to the victim.  *See* § 2B5.1 cmt. 2 ("This guideline applies to counterfeiting of United States . . . postage stamps . . . ."); *United States v. King*, 257 F.3d 1013, 1018, 1028-29 (9th Cir. 2001) (holding that § 2B5.1 applies when the defendant was convicted of violating § 501).  The sentencing court is to treat any "instrument that has been falsely made, manufactured, or altered" as "counterfeit," § 2B5.1 cmt. 1, and it should account for all counterfeits that the defendant made as "part of the same course of conduct or common scheme or plan" as the counterfeits he was convicted of making, *see* U.S.S.G. § 1B1.3(a)(2) (stating the applicable definition of "relevant conduct"); *United States v. Okai*, 454 F.3d 848, 851-52 (8th Cir. 2006) (indicating that a § 2B5.1 face-value calculation should account for relevant conduct).  The table in § 2B1.1 provides for a twelve-level enhancement if the victim suffered a loss of greater than $250,000.  *See* U.S.S.G. § 2B1.1(b)(1)(G).

---

[1]Although Matheny frames his objection as a challenge to the "calculation of [the] amount of loss" underlying the enhancement, the district court properly based the enhancement on the face value of the counterfeit stamps rather than the loss incurred by the USPS.  *See* § 2B5.1(b)(1); *id.* cmt. 2.  Accordingly, we construe Matheny's objection as a challenge to the district court's face-value calculation.

Here, the district court found that Matheny's fraudulent scheme spanned at least four years and that the face value of the counterfeits he made over the course of those four years exceeded $250,000. Accordingly, substituting the face value of counterfeits for the loss to the victim in § 2B1.1's table, the district court enhanced Matheny's base offense level by twelve levels.

Matheny objects to none of the district court's legal conclusions. Nor does he object to the district court's finding that his scheme spanned at least four years. Instead, he contests only the district court's finding that the face value of the counterfeits he made over the course of his four-year scheme exceeded $250,000. Matheny points out that the district court based its finding on an extrapolation from the results of the one-month review during which Inspector Jewell intercepted and examined every piece of mail that Matheny sent. According to Matheny, one month is "an exceptionally short period of time relative to" four years—too short to serve as the basis of a "reasonable estimate." *See Ruzicka*, 988 F.3d at 1011.

We disagree. Especially where the defendant's scheme encompassed many fraudulent acts over a long period of time, extrapolating from a representative sample may yield "a reasonable estimate" of the scale of the fraud even if the sample captures only a small percentage of the fraud. *See, e.g.*, *United States v. Johnson*, 841 F.3d 299, 303-05 (5th Cir. 2016) (affirming a loss calculation based on extrapolation from a sample of less than one percent); *United States v. Scrivener*, 189 F.3d 944, 950 (9th Cir. 1999) (affirming a loss calculation based on extrapolation from a sample of thirteen percent). Here, the Government introduced evidence that the one-month sample was representative of Matheny's fraudulent practice over the course of the four years. If anything, the sample was skewed in Matheny's favor because it was drawn from a month when his sales were relatively low. *Cf. United States v. Boesen*, 541 F.3d 838, 851 (8th Cir. 2008) (affirming a loss calculation based on extrapolation from "the lowest fraud rate in the record"). Yet extrapolating from the sample still yielded a total face value of $387,347.71, which is significantly more than $250,000. *Cf. Taftsiou*, 144 F.3d at 293 (affirming a face-value calculation after noting that, to show "reversible error," the defendants "would have to show that [the] calculations were off by" a significant margin). The district

-10-

court did not clearly err in finding that the face value of counterfeits was more than $250,000.

**IV.**

Matheny also challenges the amount of restitution that the district court ordered. We review the district court's restitution calculation *de novo* as to legal conclusions and for clear error as to factual findings. *See Ruzicka*, 988 F.3d at 1013-14. Restitution may be ordered "only for the loss caused by the specific conduct that is the basis of the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 413 (1990), unless the offense of conviction "involves as an element a scheme, conspiracy, or pattern of criminal activity," in which case restitution may be ordered for any loss caused "by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern," 18 U.S.C. §§ 3663(a)(2), 3663A(a)(2). *Compare United States v. Reynolds*, 432 F.3d 821, 822-23 (8th Cir. 2005) (reversing a restitution award for conduct distinct from, albeit part of the same scheme as, the defendant's violation of 18 U.S.C. § 844(e) because a "scheme or pattern of criminal activity is not an *element* of a § 844(e) offense"), *with United States v. Cornelsen*, 893 F.3d 1086, 1088, 1090-91 (8th Cir. 2018) (permitting restitution for all conduct that was part of the defendant's "broad scheme to defraud" where the statute of conviction was 18 U.S.C. § 1343, which lists as an element a "scheme or artifice to defraud").

Here, neither statute of conviction lists as an element a scheme, conspiracy, or pattern of criminal activity. *See* §§ 501, 554(a). Therefore, restitution to the USPS should have been limited to "the loss caused by the specific conduct that is the basis of" Matheny's forgery convictions. *See Hughey*, 495 U.S. at 413. Instead, the $256,441.78 restitution award included not only the loss due to Matheny's forging of stamps but also the loss due to Matheny's underweighting of packages.

When the record makes clear the amount of restitution that the district court should have awarded, we may remand for entry of a corrected restitution order without requiring the district court to engage in additional fact-finding. *See, e.g.*, *United States v. Searing*, 250 F.3d 665, 667-68 (8th Cir. 2001). Here, though, the

record indicates only that 65.6 percent of the packages that Matheny mailed displayed forged stamps while 21.15 percent were underweighted; the record does not indicate the dollar amount of the loss due to each category of fraud. And the district court made no findings on the matter. Therefore, we will remand for the district court to calculate the loss due to forgery and reduce the restitution award to that amount. *See United States v. Woodring*, 35 F.4th 633, 635 (8th Cir. 2022) (remanding "for fact-finding" where the appropriate restitution amount was unclear from the record).[2]

## V.

Finally, Matheny challenges the substantive reasonableness of his prison sentence. "We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard." *United States v. Espinoza*, 9 F.4th 633, 637 (8th Cir. 2021). Where the district court varied downward from the guidelines range, "it is nearly inconceivable that the court abused its discretion in not varying downward still further." *Id.*

---

[2]Arguably, the district court should have excluded not only the loss due to underweighting but also the loss due to forgery beyond the seven counts of conviction. *See Hughey*, 495 U.S. at 422 (reversing a restitution award for loss due to credit-card fraud beyond the credit-card fraud for which the defendant was convicted). But Matheny has never objected—before the district court or on appeal—to the inclusion of the loss due to forgery beyond the seven counts of conviction. All he has asked is that the restitution amount exclude any loss not due to forgery. Accordingly, he has waived any objection to the inclusion of the loss due to forgery beyond the seven counts of conviction, *see United States v. Rice*, 699 F.3d 1043, 1050 (8th Cir. 2012) ("Issues not raised in a party's opening brief are waived."); *United States v. Murphy*, 248 F.3d 777, 779-80 (8th Cir. 2001) ("[A litigant] cannot . . . complain when he receive[s] what he asked for."), and the district court need not address the issue on remand, *see United States v. Castellanos*, 608 F.3d 1010, 1017 (8th Cir. 2010) (explaining that issues that have been waived are "not within the scope of remand"); *United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001) ("[P]arties cannot use the accident of remand as an opportunity to reopen waived issues.").

Here, the district court varied downward to a term of 36 months' imprisonment from a sentencing guidelines range of 51 to 63 months.  In explaining its decision not to vary downward further, the district court acknowledged Matheny's lack of criminal history but noted the need "to deter others . . . from exploiting weaknesses in government programs" and to impose a sentence that "reflect[s] the seriousness" of Matheny's offenses.  *See* 18 U.S.C. § 3553(a)(2)(A)-(B) (directing the sentencing court to consider "the need for the sentence imposed" to "reflect the seriousness of the offense" and "afford adequate deterrence to criminal conduct").  This is not the "nearly inconceivable" case where a district court that varied downward nonetheless "abused its discretion in not varying downward still further."  *See Espinoza*, 9 F.4th at 637.  Matheny's 36-month prison sentence is not substantively unreasonable.  *See id.* (holding that a sentence below the guidelines range was not substantively unreasonable notwithstanding the defendant's "lack of criminal history" in part because of "the gravity" of the defendant's conduct).

## VI.

For the foregoing reasons, we affirm Matheny's convictions, vacate the district court's restitution order and remand for the district court to limit the restitution award to the loss due to forgery, and otherwise affirm Matheny's sentence.

_____