# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3467
_____

United States of America

*Plaintiff - Appellee*

v.

George L. Liakos

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Lincoln
_____

Submitted: June 10, 2024
Filed: August 19, 2024
[Unpublished]
_____

Before COLLOTON, Chief Judge, ARNOLD and GRUENDER, Circuit Judges.
_____

PER CURIAM.

George Liakos pleaded guilty to one count of bank fraud. *See* 18 U.S.C. § 1344. He had overstated his farm's inventory and failed to report its outstanding loans and accounts payable when seeking loans from Great Western Bank, resulting in the bank loaning Liakos millions of dollars that he could not repay. When Liakos's fraud was discovered, he owed Great Western Bank $12,114,650.44.

The loans were secured by Liakos's farm and personal property. Great Western Bank quickly moved to seize and sell this collateral. However, Liakos's farm, by far the most valuable collateral, was already subject to a $3,403,984.32 lien held by Prudential Insurance. To quiet title to the farm and obtain a higher price in a foreclosure sale, Great Western Bank paid Prudential $500,000 plus the note's value, $3,903,984.32 in total, to purchase the superior lien. At the subsequent foreclosure sale, Liakos's farm sold for $5,788,908, but he was credited for restitution purposes with $6,325,000, the fair market value of the land as determined by an appraisal. In total, Liakos was credited with $10,959,599.33, leaving a shortfall of $5,059,035.43. At sentencing, the district court[1] ordered Liakos to pay the $5,059,035.43 shortfall in restitution to Great Western Bank. The district court also sentenced Liakos to 36 months' imprisonment and 5 years' supervised release. Liakos appeals the restitution order.[2]

Liakos argues that the district court clearly erred in its restitution calculation and awarded a windfall to Great Western Bank because it improperly included the amount that Great Western Bank spent to purchase the Prudential lien in the restitution order and improperly valued the collateral Great Western Bank seized and sold.

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

[2]Liakos also appeals his terms of imprisonment and supervised release, but these arguments are foreclosed by his appeal waiver, in which Liakos waived his right to appeal except as to the amount of restitution ordered and whether his counsel was ineffective. "So long as there is no miscarriage of justice, we will enforce a defendant's [appeal] waiver if the appeal falls within the scope of the waiver and the defendant entered into the waiver and the plea agreement knowingly and voluntarily." *United States v. Seizys*, 864 F.3d 930, 931 (8th Cir. 2017). Appealing the sentence is within the scope of the waiver, and the record establishes that Liakos agreed to the waiver knowingly and voluntarily—the Government described the contours of the appeal waiver, the district court explained Liakos's right to appeal, and Liakos confirmed that he understood the contours of the agreement, including which arguments he was preserving and which he was waiving. *See id.* at 932.

"We review the district court's restitution calculation *de novo* as to legal conclusions and for clear error as to factual findings." *United States v. Matheny*, 42 F.4th 837, 845 (8th Cir. 2022). "Once the district court has identified a victim, it must determine the full amount of each victim's losses, based on the amount of *actual* loss caused by the defendant's offense." *United States v. Karie*, 976 F.3d 800, 805 (8th Cir. 2020) (internal quotation marks omitted). "The government bears the burden of proving the amount of restitution based on a preponderance of the evidence." *Id.* (internal quotation marks omitted). "Restitution may be ordered only for the loss caused by the specific conduct that is the basis of the offense of conviction," *Matheny*, 42 F.4th at 845 (internal quotation marks omitted), and "[a]nything a victim would have had to pay, regardless of the defendants' actions, cannot be a loss caused by the fraud," *Karie*, 976 F.3d at 805 (internal quotation marks omitted). But "[w]hen determining restitution, the district court need make only a reasonable estimate of the loss, and we accord particular deference to the loss determination because of the district court's unique ability to assess the evidence and estimate the loss." *United States v. Carpenter*, 841 F.3d 1057, 1060 (8th Cir. 2016) (internal quotation marks omitted).

We first address whether the district court clearly erred by including the amount that Great Western Bank spent to purchase the Prudential lien in the restitution order. The commentary to the Sentencing Guidelines provides that the amount of restitution owed to the victim includes any "reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 cmt. n.3(A). Liakos asserts that the purchase price for the Prudential lien should not be included in the restitution amount because it was unreasonable for Great Western Bank to purchase Prudential's superior lien. According to Liakos, there would have been "little or no difference in the outcome" had Great Western Bank not done so. But if Great Western Bank had not eliminated Prudential's superior lien, it would have been vulnerable to various future losses. For instance, once Prudential decided to exercise its rights as senior lien holder, it would have little incentive, beyond its obligations under state law, to try to recover more than the first lien amount. In addition, Great Western Bank's inability to pass clean title may have reduced the

farm's sale value further or put off prospective purchasers altogether. In light of Prudential's lack of incentive to seek more than just its own lien amount and Great Western Bank's inability to pass clean title, we conclude that the district court did not clearly err by concluding that it was commercially reasonable for Great Western Bank to pay the value of the note in addition to the premium for Prudential's superior lien. S*ee United States v. Statman*, 604 F.3d 529, 537-38 (8th Cir. 2010) (affirming a district court's restitution amount that included foreclosure expenses).

We next address Liakos's contention that the district court improperly valued his farm. Although the farm sold for $5,788,908 and Liakos was credited for restitution purposes with $6,325,000, Liakos asserts that the farm was actually worth something more like eight to eleven million dollars. But Liakos failed to present any evidence supporting this assertion, and the district court determined that Liakos's "opinion as to the value of his collateral is not supported by any type of commercially reasonable methodology for appraising property, and therefore is not credible for these evidentiary purposes." This was not clear error. *See Alexander*, 679 F.3d at 730 (affirming restitution order where defendant "may be correct that the foreclosure sale may not have provided an optimal outcome" but had "failed to cite any authority to support [her] contention that the foreclosure sale was commercially unreasonable").

Affirmed.

_____